## Michael Horan v. A. B. Frank et al.

1. Lien—Mechanic's lien.—Neither under section 37 of article 16 of the Constitution of 1876, nor under the act of August 7, 1876, is a lien given to a sub-contractor for the construction of a house. The claim of the sub-contractor for building a homestead may be protected by delivering to the owner of the property an attested account of the amount due from the principal contractor, and the property owner is thus made liable to the sub-contractor for the amount of the claim, provided it does not exceed the amount then due from the owner to the original contractor.

2. Approved.—Shields v. Morrow, ante, approved.

3. Lien—Sub-contractor—Quere.—Whether a sub-contractor may not be subrogated to the lien rights of the principal contractor to

the extent due the principal contractor, when on proper pleadings and evidence it is made apparent that a fraudulent combination exists between the property owner and the insolvent original contractor to defraud the sub-contractor?

APPEAL from Bexar. Tried below before the Hon. G. H. Noonan.

In the spring of 1877, A. B. Frank and M. Goldfrank, members of the commercial firm of Goldfrank, Frank & Co., purchased from Joseph Landa a lot of ground in the city of San Antonio. On the 11th of July, Goldfrank, Frank & Co., of which firm A. B. Frank and M. Goldfrank were the active and resident partners, made a written contract with Benjamin Hyatt and John F. Hinman, a building firm in business under the style of Hyatt & Hinman, to erect for them a block of three stores, extending from street to street and entirely covering a plat of ground described in the petition. Hyatt & Hinman proceeded to carry out their contract, and employed the plaintiff, Michael Horan, to haul materials for the construction of the building. He, working under this contract, performed labor in the construction of the buildings proposed, amounting in value to $297, and received in cash, corn, and hay, $77.65; leaving still due him for labor $219.35.

Hyatt & Hinman having given up their job and not paying plaintiff, he attempted to fix his lien, under the statute, by " causing a bill of particulars to be made out in triplicate, together with a description of the lot and the buildings thereon, all duly sworn to, and by having one of the said bills of particulars and descriptions recorded in the office of the county clerk of Bexar county, furnishing one to A. B. Frank and one to J. F. Hinman, and by doing all other things requisite to be done under the statute to fix and secure a lien, if one could exist."

This suit was brought to enforce a lien on the lot and buildings and to obtain a personal judgment against Hyatt & Hinman, and also to obtain a personal judgment against

Frank & Goldfrank, in case there remained anything due from them to Hyatt & Hinman.

The defendants Hyatt & Hinman filed an appearance only.

The defendants Frank & Goldfrank pleaded to the jurisdiction of the District Court, on the ground that the amount in controversy was less than $500, and that the plaintiff had no lien on the real estate described in the petition, by reason of his being only a sub-contractor, and not an original contractor.

The court sustained the plea to the jurisdiction and dismissed the case.

The plaintiff moved for a new trial, which was overruled.

The plaintiff appealed and assigned for error—

First. The court erred in sustaining the defendants' plea to the jurisdiction and dismissing the case.

Second. The court erred in overruling plaintiff's motion for a new trial.

*J. H. McLeary*, for appellant.—The plaintiff, being a sub-contractor immediately under the original contractor, has a lien on the buildings and lot of ground necessarily connected therewith to the amount of his labor performed in the construction of the same. (Const., art. 16, sec. 37; Laws 1876, ch. 81, p. 76; Laws 1871, 2d Sess., pp. 28, 29; Const. 1870, art. 12, sec. 47; Waldroff *v.* Scott, 46 Tex., 1–6; Odum *v.* Loomis, 2 Tex. Law Jour., 388, 389; Gaylord *v.* Loughridge, 50 Tex., 573; Phillips on Liens, secs. 58, 61, 62, 251, 253, 256, 311, 312; Derrickson *v.* Nagle, 2 Phila., 120; Davis *v.* Livingston, 29 Cal., 283.)

It certainly was not the intention of the members of the Constitutional Convention to provide liens for laborers on public buildings, railroads, &c., and to deny the same right to laborers on other buildings. Such a conclusion cannot be entertained.

What would have been the position of this question had the sixth section been omitted from the act of 1876?

The appellee could not then say that the rights given the sub-contractor by the Constitution had been limited, and there would be no doubts as to his right to enforce the lien.

Then, unless the Legislature could, in the sixth section, repeal the Constitution, the sub-contractor has a lien on the buildings and lots for the value of his labor, and the District Court had jurisdiction of this case, and it was error to dismiss it for want of jurisdiction.

*Wælder & Upson,* for appellees.

BONNER, ASSOCIATE JUSTICE.—The material question in this case is this: Is a sub-contractor, under the Constitution of 1876 and the act of August 7, 1876, in pursuance thereof, providing and regulating mechanics' liens, entitled to such lien on the property for the amount due him by the principal contractor, the owner of the property not having been a party to their contract?

Section 37 of article 16 of the Constitution of 1876 provides as follows: "Mechanics, artisans, and material-men, of every class, shall have a lien upon the buildings and articles made or repaired by them for the value of their labor done thereon or material furnished therefor; and the Legislature shall provide by law for the speedy and efficient enforcement of said liens."

It may be remarked that, under the Constitution, no lien is given on the land as prayed for by plaintiff, but on the buildings only.

This provision of the Constitution evidently contemplated action on the part of the Legislature to provide by law for the enforcement of the lien thereby guaranteed.

In accordance with this express intention, the first Legislature thereafter passed the act of August 7, 1876. (Laws 15th Leg., 91.) Thus, almost immediately after the adoption of the Constitution, the Legislature construed this section of the same. By this legislative construction, and which should be entitled to great weight, no lien was given to such sub-

contractor, unless possibly under section 5 of the act, when a written contract had been duly made and recorded for the improvement of the homestead; but his rights were protected by a personal liability upon the owner of the property by delivering to him an attested account of the amount due by the principal contractor to the sub-contractor; this liability, however, not to exceed the amount then due by the property owner to the principal contractor.

This legislative construction complies with the language and the reasonable requirements of the Constitution, and accords with that given by this court in the case of Shields v. Morrow, decided at the present term, to the act of November 17, 1871, (Paschal's Dig., art. 7112,) passed under section 47 of article 12 of the Constitution of 1869, and to our previous statutes upon this subject.

We do not say that, under the Constitution, or even without the clause above cited, the Legislature might not, with proper safeguards protecting the just rights of the property owner, provide also for a lien to secure the sub-contractor to the extent of any amount which might be due by the owner to the principal contractor at the time the lien attached and notice thereof, either actual or constructive, given to the owner; but it has not thus provided.

Neither do we say that, in a proper case, (as where there was a fraudulent combination between the property owner and the principal contractor, who may be insolvent, to defeat the just rights of the sub-contractor,) he might not, upon sufficient allegations and proof, be subrogated to the lien of the principal contractor to the amount justly due him by the owner; but this case is not now presented by the record.

We are of opinion, then, that the plaintiff was not entitled to the lien on the property as claimed by him; and as his demand otherwise was not within the jurisdiction of the court, the judgment below, refusing the lien and dismissing the cause for the want of jurisdiction, is affirmed.

AFFIRMED.