WILLIAM POOL v. JOHN H. SANFORD ET AL.

| 52 | 621 |
| 76 | 167 |
| 52 | 621 |
| 81 | 298 |

1. INTERVENTION.—To entitle a party to intervene in a suit pending, his interest, legal or equitable, must be such, that had the original action never been commenced, and the intervenor had brought the suit in his own name as sole plaintiff, he would have been entitled to recover in his own name to the extent at least of a part of the relief sought; or had the action been first brought against him, as a defendant he would have been able to defeat the recovery, in part at least.

2. FACT CASES.—See statement of case for causes for action justifying intervention.

3. MECHANIC'S LIEN.—The right to a mechanic's lien depends on a substantial compliance with the statute which confers it.

4. MECHANIC'S LIEN—PLEADING. — The requisites of the statute conferring a mechanic's lien are necessarily descriptive thereof, and if omitted in the pleading claiming the enforcement of such lien, will subject it to demurrer.

5. CASE APPROVED.—Tinsley *v.* Boykin, 46 Tex., 599, approved.

6. EXHIBIT—PLEADING.—An exhibit attached to a petition claiming a mechanic's lien, which exhibit upon its face shows that it was recorded, and that a copy thereof was served upon defendant as required to fix the lien, will not relieve the pleader from the necessity of averring those facts.

7. EXHIBITS—PLEADING.—An exhibit filed with a plea can only, under rule 19, for the government of the District Courts, be looked to in aid and explanation of specific allegations made in the plea.

8. PRACTICE — SPECIAL VERDICT. — In the absence of a statement of facts, special findings of the jury trying the cause below, in response to issues submitted, will be regarded as conclusive between the parties as to the facts found.

9. PLEADING—LIEN—CONTRACTOR.—See case for pleading and verdict, under which it was held error to render judgment for an intervenor enforcing a lien as an original contractor.

10. MECHANIC'S LIEN.—Under article 7112 of Paschal's Digest, one furnishing material used in the construction of the house, who complies with the requisites of the law to fix the lien conferred by the statute, is entitled to its provisions without alleging or proving his vocation as an artisan or mechanic.

11. SUB-CONTRACTOR — GARNISHMENT — EQUITY — LIEN.—A sub-contractor who will avail himself of the special provisions of the statute in the nature of a garnishment, and thereby adjust the "true sum due" him from the original contractor, and fix the liability of the owner of the property for its payment, may afterwards, in a proper case, upon

sufficient allegations and proof of collusion between the owner and the original contractor, or fraud or insolvency of the parties, be subrogated to the rights of the principal contractor, both as to the amount due as thus adjusted and also as to the mechanic's lien to secure the same.

12. MECHANIC'S LIEN.—The owner of property who contracts for the construction of a building thereon, cannot be compelled to pay any greater amount under his contract than the contract price, including all prior voluntary payments made in good faith, according to the terms of his contract, for which a lien was fixed and secured for the benefit of the principal contractor under the statute.

13. SUB-CONTRACTOR—SUBROGATION.—To entitle a sub-contractor, or one who has furnished materials, to be subrogated to the rights of a principal contractor, the statutory notice in the nature of a garnishment, by service of an attested account of the amount and value of the work and labor performed or materials furnished and remaining unpaid, must have been given. Mere ordinary notice, information, or knowledge on the part of the owner, that the principal contractor was indebted to the sub-contractor, would not, of itself, be sufficient to bind the owner.

14. SAME—STATUTE OF FRAUDS—LIEN.—See concluding portion of opinion for facts which would take a verbal contract by a sub-contractor out of the statute of frauds, and would entitle him, on complying with the statute regulating liens, to the rights of an original contractor.

APPEAL from Galveston. Tried below before the Hon. A. P. McCormick.

Suit by John H. Sanford against the appellant, Pool, alleging that in July, 1873, William Pool, the defendant, "contracted with the plaintiff to pay him $6,000, in consideration that the plaintiff would supply the material and erect a dwelling-house for defendant on lots 5, 6, and 7 in block 204, in Galveston, owned by the defendant, in accordance with plans and specifications in possession of the defendant; that plaintiff, in pursuance of that contract, at defendant's special request, furnished all the lumber and other material, and performed all the work required in the construction and completion of the building, &c.

Plaintiff also claimed, for extra work, the additional sum of $1,957.50, according to an account made an exhibit. San-

ford admitted payment of $3,160, and that he had, at different times, given orders on defendant which may have been paid, but amounts were unknown, and that he was willing to allow all such and other just credits.

Plaintiff claimed "that the work and materials furnished by him in his business as a mechanic gave him a lien upon the said dwelling and lots." There was no allegation in the petition that the contract was recorded, nor any that the bill of particulars or account was recorded. He prayed for judgment for balance due him, and for foreclosure of his lien.

On the 2d of April, 1875, C. H. Moore & Co. filed their petition as intervenors, claiming a lien on the building and lots, alleging that they had "sold to William Pool material which was used in the construction" of the dwelling-house of the value of $802.85, setting forth an itemized account, praying for judgment for that amount and foreclosure of their lien. There was no allegation in the petition that the intervenors' itemized bill of particulars was recorded, or that there was any record of the lien claimed, nor was there any proof of a record of lien.

On the 16th of April, 1875, Wedemeyer & Schulte, as artisans and painters, filed their petition of intervention, alleging that, at the request of Sanford, the plaintiff, a builder and contractor then employed by defendant to erect the building, they furnished the material and did the painting, inside and out; that thereby "the plaintiff became liable and promised to pay them $408 therefor"; that plaintiff refused to pay them; that during the progress of the work the defendant promised to pay intervenors the sum aforesaid for their work, wherefore defendant was indebted therefor; that the work was done on the dwelling on said lots owned by defendant; that the account for the work was made out and verified by oath as required by law, and the same was duly recorded in the office of the district clerk of Galveston county on March 18, 1874, and a copy thereof, duly certified, served on defendant, and that said account was accompanied with a description of the house

and lots upon which, as mechanics, intervenors claimed a lien to secure the debt which they claimed against the defendant. They asked for judgment for the money claimed, and for foreclosure of the lien.

Defendant Pool filed a general demurrer to plaintiff's petition, and special exceptions to all that part asserting a lien; pleaded the general issue, and specially, that defendant did enter into a contract in writing, (which was set forth,) with plaintiff, by which he undertook to furnish all material and build a house for defendant on the lots, which were then, and still are, the homestead and place of residence of defendant, he being a married man, with wife and children occupying the same; that the house was to be completed, in all respects, in first-rate mechanical style, for the price of $6,000; that defendant had overpaid the plaintiff to the extent of amounts set forth in schedule, aggregating in amount $6,662.84, and pleaded in reconvention the excess paid; he also pleaded in reconvention for damages for unskillful performance of the work, and for breach of the contract in other respects specially set forth, &c.

To the interventions of C. H. Moore & Co. and Wedemeyer & Schulte, Pool demurred generally, and specially to their claim of lien, and answered by general denial, and specially, in substance, that defendant had paid to plaintiff the full amount due him in good faith, before any claim of plaintiff's lien was ever made, or notice duly served on defendant; denied all liability as to the alleged debts and liens, reiterated the homestead exemption, and reasserted the matters set forth in his defense to plaintiff's demand.

The court overruled the several demurrers of the defendant, general and special, and submitted the cause to the jury upon general charge, and also upon two sets of issues, one marked as submitted by plaintiff and intervenors, the other by the defendant, which the jury were required to answer by their verdict.

The jury found, on the general charge, for the plaintiff, in

the sum of $483.45, and upon the special issues submitted as follows:

1. What amount is due plaintiff from defendant on the written contract? Ans.—Nothing was due plaintiff on written contract.

2. Was the work claimed by plaintiff to be extra work, in fact extra work, and not embraced or included in the terms of the written contract? Ans.—The following we consider as extra work done on the house, to wit: Ceiling outside house, wainscoting, paneling on house and upper gallery, difference in the thickness of chimney.

3. What was the value of the extra work done by plaintiff, if any was done? And was the extra work authorized by defendant, or was plaintiff induced by defendant to do the extra work, or did defendant subsequently accept and approve of the extra work? Ans.—Value of extra work done, as enumerated in answer number 2, $781, which was authorized and accepted by defendant.

4. Were the materials furnished as claimed by C. H. Moore & Co., intervenors, and were they used in the construction and building of the improvements mentioned and specified in intervenors' claim of C. H. Moore & Co.? Ans.—The materials furnished by the intervenors, C. H. Moore & Co., were used in construction of the building of the improvements mentioned and specified in the intervenors' claim of C. H. Moore & Co.

5. What was the value of the material furnished by Moore & Co.? Ans.—The value of the material furnished by C. H. Moore & Co. we find to be $802.85.

6. Did defendant (Pool) at any time have notice of the furnishing of materials by C. H. Moore & Co.? At what time? Ans.—The defendant (Pool) did have notice of the furnishing of material by Moore & Co. on or about November 4, 1873.

7. Was defendant (Pool) indebted to Sanford at the time of said notice? In what amount? Ans.—The defendant (Pool) was indebted to Sanford on or about November 4, 1873, about $1,200.

8. Was any material furnished by Moore & Co., to be used in the construction of Pool's house, after the notice to Pool? What amount in value? Ans.—There were materials furnished by Moore & Co. after November 4, 1873, to be used in the construction of Pool's house.

9. Did defendant, by acts or words, induce or lead intervenors C. H. Moore & Co. to believe that he would withhold the amount then due Sanford by him until C. II. Moore & Co.'s claim was settled? Ans.—He (Pool) did lead C. H. Moore & Co. to believe that he would withhold the amount then due Sanford until the claim of C. II. Moore & Co. was settled.

10. Has the amount claimed to be due C. H. Moore & Co. been paid by Sanford or Pool? Ans.—The amount due C. H. Moore & Co. has not yet been paid.

11. Was the work done by intervenors Wedemeyer & Schulte as claimed by them? What was the value of the work? Ans.— The work was done done by Wedemeyer & Schulte as claimed by them, amounting to $105.

12. Has the claim of Wedemeyer & Schulte been paid by Pool or Sanford? Ans.—The claim of Wedemeyer & Schulte has not yet been paid.

13. Was the work done on the improvements mentioned and set forth in the intervention claim of Wedemeyer & Schulte? Ans.—The work was done as claimed by Wedemeyer & Schulte.

14. Did defendant have notice of the claim of Wedemeyer & Schulte? If so, at what time? Ans.—The defendant did have notice of the claim of Wedemeyer & Schulte, November, 1873.

15. Was defendant indebted to Sanford at the time of his notice of Wedemeyer & Schulte's claim? Ans.—Defendant was indebted to plaintiff at the time of his notice of Wedemeyer & Schulte's claim.

16. What amount of work, if any, was done by Wedemeyer & Schulte on Pool's house after notice to Pool of their claim?

Ans.—The amount of work done by Wedemeyer & Schulte on Pool's house after notice to Pool of their claim amounted to $355.

The following issues were submitted on behalf of the defendant by the court to the jury, and responses thereto are given, to wit:

1. What amount, if anything, is owing by Pool to Sanford on the contract in writing? Ans.—There is nothing due Sanford by Pool on the written contract.

2. Did Sanford do any extra work, at the request of Pool, which was not fairly included by the contract? Ans.—Sanford did do extra work at the request of Pool.

3. If he did, what was it and what its value? Ans.—The following was extra work done, with its value attached: Ceiling outside house, $390; wainscoting, $291; paneling lower and upper gallery, $30; difference in thickness of chimney for range, $70,—$781.

4. How much had Pool paid to Sanford previous to the 18th of March, 1874? Ans.—Pool paid to Sanford, before March 18, 1874, $6,212.55, and on April 12, 1874, paid $85.

5. How much, if any, did Pool overpay Sanford, and what is the excess, if any, due from Sanford to Pool? Ans.—Pool overpaid Sanford, on written contract, $297.55.

6. Were the lots on which the house was erected by Sanford the homestead of Pool, and was he then and now a married man and head of a family? Ans.—The lots on which the house was erected were the homestead of Pool, and he was then and is now a married man and head of a family.

7. Did C. H. Moore & Co. sell and contract with Sanford for the materials, &c., charged in his account filed? Ans.—C. H. Moore & Co. did sell and contract with Sanford for the material, &c., charged in his account filed.

8. Was the material so charged for used in the erection of Pool's house? Ans.—The material so charged for was used in the construction of Pool's house.

9. What is the value of material above mentioned? Ans.—

The amount of the value of above-mentioned material, furnished by C. H. Moore & Co., was $802.85.

10. Did Sanford contract with Wedemeyer & Schulte for the painting? Ans.—Sanford did contract with Wedemeyer & Schulte for the painting of said house.

11. What is the value of the painting? Ans.—The value of said painting was $405.

12. Was it performed on Pool's house? Did Pool agree to pay them for it? Ans.—It was performed on Pool's house, and the amount due them (Wedemeyer & Schulte) would be paid out of the fund due Sanford.

13. Did Pool agree to pay to them therefor out of his own funds, or out of the money that might be coming to Sanford on the contract? Ans.—That he promised to keep it back out of Sanford's money, and not out of his own funds.

14. Was this agreement, if any was made, verbal or in writing? Ans. — The agreement between Wedemeyer & Schulte was made verbally.

                            (Signed)        J. T. MUNN, Foreman.

The court gave judgment on this verdict in favor of Pool, against Sanford, for $741.70 and costs, and against Pool, in favor of C. H. Moore & Co., for $802.85, and against Pool, in favor of Wedemeyer & Schulte, for $405; also decreed a lien in favor of the intervenors, respectively, on the lots and improvements, and ordered a sale thereof, &c. The defendant moved for new trial, which was overruled; to which the defendant excepted, and gave notice of appeal as to so much of the judgment as affected the intervenors.

*Willie & Cleveland,* for appellant.

I. The exceptions to the intervention of C. H. Moore & Co. and of Wedemeyer & Schulte, should have been sustained.

In ascertaining their right to intervene, regard must be had not only to their pleadings, but also to those of the original parties. The proceeding to foreclose the mechanic's lien, under the statute, is a proceeding *in rem*. The plaintiff sued

for balance due him on contract for erecting, and furnishing the material for, the building of defendant, and for extra work. It is true he claimed a lien, but there was an entire absence of allegations in his petition by which to support the claim. There was no allegation that the contract referred to by him, under which the work was performed, or that the bill of particulars for the extra work sued for, was ever recorded, so as to fix or secure the lien, as contemplated by the statute. (Paschal's Dig., art. 7112.)

II. These intervenors were sub-contractors. They were bound to know and take notice of the contract as between the plaintiff and defendant, and no lien independent of the original contract could arise—none other could be secured or fixed—and in order to fix a lien as to any one, whether original or sub-contractor, the contract should have been recorded within the time prescribed by law. It was never recorded.

The lien of a sub-contractor, if he have any, is subordinate to the owner's contract, (Phil. on Mech. Liens, sec. 62, p. 90,) of which the sub-contractor is conclusively presumed to know. The mere fact that the intervenors claimed a debt due them from the owner for work on the same building contracted to be built by Sanford for the defendant, would not entitle them to intervene. "No personal judgment in favor of a sub-contractor can be rendered against the owner, because not personally liable to him; his remedy is in rem, against the property only, and that to the extent of the contractor's lien, to which the sub-contractor may be subrogated." (Phil. on Mech. Liens, p. 308.)

But the question still recurs, How can either or any have a lien, secure or fix such lien, so as to entitle them to this extraordinary statutory remedy? We answer, by recording such contract, through which each and all must derive their lien, which is not fixed or secured till recorded, and only from thenceforth.

III. But supposing that the allegations of the plaintiff had set forth the facts which, under the statute, would fix and se-

cure a lien in him, then the question would recur, with respect to the petition of C. H. Moore & Co., is it, considered with respect to itself, sufficient? The statute calls for judicial interpretation. We think a correct rendering of article 7112 of Paschal's Digest is: "Any person or firm, [being] artisan or mechanic," &c. And this interpretation is strengthened when we come to the second clause of the first section of the act: "In order to fix and secure the lien herein provided for, the contractor, mechanic, laborer, or artisan furnishing material, shall have the right at any time within six months after such debt becomes due to file his contract, &c. If the contract, order, or agreement be verbal, &c., a bill of particulars must be recorded. When such contract or account is filed and recorded, it shall be deemed sufficient diligence to fix and secure the lien," &c., from date of filing.

C. H. Moore & Co. do not show by allegation that they were of the class for whom the statute provides, unless it be held that the statute means that "any person or firm" whose material is used in the construction of a building is entitled to the lien, without regard to his or their vocation or to his or their relation to the building. The courts will not extend the lien by construction. (Cronkright v. Thomson, 1 E. D. Smith, (N. Y.,) 661; Doughty v. Devlin, Id., 646; 2 E. D. Smith, 556, 596, 611; 33 Mo., 396; 3 Oregon, 372; 43 Cal., 515; 24 Ill., 517; 24 Wis., 563.)

IV. The judgment in favor of intervenors derives no support from the special finding of the facts by the jury; for these must be tested by the pleadings. A fact found or proven without allegation, affords no more ground for judgment than does an allegation without proof.

V. An owner cannot be made pay more than the contract price, and the garnishing notice only stops payments from thenceforth. All payments before that are valid. (Phil. on Mech. Liens, p. 270; 1 Sandf., 14.) The garnishing notice referred to is the statutory notice of attested account, delivered to the owner or the claimant, showing amount claimed and

for what work or material,—not a mere dry notice, independent of the form required by statute; for we remark here, that there is no allegation of such notice as, under the statute, would operate as garnishment in favor of intervenors C. H. Moore & Co., and that the verdict of the jury of notice, &c., cannot aid the intervenors' claim.

In the case of Holmes v. Shands, 26 Miss., 639, the court held, that "where the material or labor is bestowed by contract with a third person and on his account, such person being under contract with the owner of the property to do the work and furnish the material, there is no liability on the part of the owner of the property, except to the party with whom he contracted."

And again, in 2 Ohio St., 124, it is said: "Material must be furnished for the purpose or with the understanding that it shall be used for the purpose of some building, on the credit of the building rather than on the personal credit of the buyer."

That the decree for the sale of the homestead lots—not the house only—was error, we are prepared to show upon authority and reason ; and on that question would prefer to be heard orally before your honorable court.

*Harcourt & Spencer* and *James B. Stubbs*, for appellees.—The first assignment is, that "the court erred in overruling the demurrer and special exceptions to the intervenors."

I. This action of the court was correct, certainly as far as the general demurrer was concerned, and the special exceptions were only to that part asserting a lien on the property under the law then in force. All the requisites of a valid mechanic's and material-man's lien were stated.

II. The judgment follows as matter of course upon the verdict.

The jury found on the general charge in favor of plaintiff for §483.75, and upon the special issues. [See statement of case.] (Paschal's Dig., art. 7112; Shields v. Morrow, 51 Tex., 393; Waldroff v. Scott, 46 Tex., 1.)

III. An intervenor can avail himself of the benefit of the original suit, and show that he is entitled to the subject in dispute to the exclusion of either party; and whether the subject be the recovery of a personal judgment, the foreclosure of a lien, or both, our practice favors such consolidation, which is, perhaps, the only proper course. (Waldroff v. Scott, 46 Tex., 1; Hancock v. Dimon, 17 Tex., 369; Eccles v. Hill, 13 Tex., 65; Smith v. Allen, 28 Tex., 497; Pomeroy's Remedies, 458–468; Stich v. Dickinson, 38 Cal., 608.)

IV. The alleged promise of Pool to pay intervenors for work done and material furnished towards the erection of his building, was an original undertaking, and not the promise to pay the debt of another; and upon that ground intervenors stated a good cause of action.

V. The act of November 17, 1871, (Paschal's Dig., art. 7112,) provided that when labor was performed or material furnished in the erection of improvements upon a homestead, the person so performing the work and furnishing the material should have a lien upon the lots and the improvements, to be secured and enforced as in other cases, and was entitled to an order of sale. (Act of November 17, 1871, secs. 3, 4; Pope v. Graham, 44 Tex., 196.)

VI. Where the petition contains a good cause of action, and there is no statement of facts and bills of exception, it will be presumed that the facts in evidence before the jury sustained their verdict, and that everything was proved which was susceptible of legal proof.

VII. In the absence of a statement of facts, this court cannot revise the rulings of the court below in giving or refusing instructions. (Teas v. McDonald, 13 Tex., 355; Roberts v. Heffner, 19 Tex., 131; Baldwin v. Dearborn, 21 Tex., 446; St. Clair v. McGehee, 22 Tex., 5; Walling v. Kinnard, 10 Tex., 508.)

BONNER, ASSOCIATE JUSTICE.—It is contended by appellant Pool that appellees Moore & Co. and Wedemeyer & Schulte had no right to intervene in this case.

We have no statute providing for the right of intervention, but our practice on this subject, as said in Whitman *v.* Willis, 51 Tex., 425, is probably derived through the Ecclesiastical Courts of England and the modifications of the civil law as found in the State of Louisiana, and rests upon the principle that a party should be permitted to do that voluntarily which, if known, a court of equity would require to be done.

In 2 Chitty's General Practice, 492, it is stated that "if any third person consider that his interest will be affected by a cause which is pending, he is not bound to leave the care of his interest to either of the litigants, but has a right to intervene or be made a party to the cause, and to take on himself the defense of his own rights, provided he does not disturb the order of the proceedings."

In Brown *v.* Saul, 4 Mart., (N. S., La.,) 434, decided in the Supreme Court of Louisiana, to which State we can very appropriately look for light upon this question, it was held, that to give this right the intervenor should have with one of the original parties a union of interest in relation to the subject-matter in dispute, and that this interest should be founded on some right, claim, or lien, either conventional or legal, directly and closely connected with this subject-matter.

Mr. Pomeroy, in his work on Remedies and Remedial Rights, sec. 430, after a review of the decisions in Iowa, California, and Louisiana, sums up the doctrine of intervention in the following language:

"The intervenor's interest must be such, that if the original action had never been commenced, and he had first brought it as the sole plaintiff, he would have been entitled to recover in his own name to the extent at least of a part of the relief sought; or if the action had first been brought against him as a defendant, he would have been able to defeat the recovery, in part at least. His interest may be either legal or equitable."

It is believed that our practice substantially conforms to these principles, and permits intervention in suits for real or personal

property. (Field v. Gantier, 8 Tex., 74; Eccles v. Hill, 13 Tex., 65; Burditt v. Glasscock, 25 Tex. Supp., 45; Smith v. Allen, 28 Tex., 497; Smalley v. Taylor, 33 Tex., 668; Mussina v. Goldthwaite, 34 Tex., 125; Whitman v. Willis, 51 Tex., 421; Sayles' Prac., ch. 14.)

Upon the issues as presented by the pleadings, we are of opinion that the claims of the original plaintiff, Sanford, and of the intervenors were so intimately connected, and so dependent the one upon the other, as to present a proper case and subject-matter for intervention, so that the respective rights and interests of all the parties, including the plaintiff himself, could be adjusted and protected. (Phil. on Mech. Liens, sec. 205; Loonie v. Hogan, 5 Seld., (9 N. Y.,) 440.)

To hold otherwise might subject the property to the very liability suggested by appellant — the enforcement of two or more liens for the same indebtedness. (Waldroff v. Scott, 46 Tex., 1.)

The demurrer of appellant Pool, defendant below, to the pleadings of Sanford, the original plaintiff, so far as he sought to enforce his alleged mechanic's lien, should have been sustained. The right to such lien depends upon a substantial compliance with the statute giving the same.

The requisites of the statute are necessarily descriptive of the lien, and if omitted in the pleadings should subject them to demurrer. (Tinsley v. Boykin, 46 Tex., 599; Sutherland v. Ryerson, 24 Ill., 517; Shaw v. Allen, 24 Wis., 564.)

The only allegation in the petition, in regard to the lien, was that plaintiff claimed "that the work and materials furnished by him in his business as a mechanic gave him a lien upon the said dwelling and lots."

If, however, the pleadings of plaintiff had been sufficient on general demurrer, they were clearly insufficient when tested by the special demurrers of defendant, and these should have been sustained.

The same objection applied to the petition of intervenors Moore & Co., so far as they sought a lien, either as principal

or sub-contractors, unless the recitals in the exhibit to their petition can be taken as affirmative allegations of the grounds of their alleged lien. This exhibit was referred to only as an itemized account of the articles furnished by them, and of the value of the same. It shows, however, that it was recorded and a copy served upon defendant Pool as required by statute to fix the lien, but there were no allegations to this effect in the pleading itself.

Rule 19 of this court, for the government of the District Courts, (47 Tex., 620,) provides that exhibits may be attached to a pleading, and referred to as such, in aid and explanation of the allegations therein; but this will not relieve the pleader from making the proper allegations, of which the exhibits may be the evidence, in whole or in part.

This is but declaratory of what the proper practice was before the adoption of the rules, and tested by it, the demurrer to so much of the pleadings of Moore & Co. as claimed a lien should have been sustained. These intervenors did not, by proper and appropriate allegations, show that either the original plaintiff, Sanford, or they themselves were entitled to a mechanic's lien.

The petition of Wedemeyer & Schulte did not show that Sanford was entitled to the mechanic's lien, but it was sufficient to entitle them, if sustained by the evidence, to such lien as principal contractors themselves. There is no statement of facts in the record, but there were certain special verdicts in response to issues made up under the direction of the court, and which, under the statute, are "conclusive between the parties as to the facts found." (Paschal's Dig., art. 1469; Rev. Stats., art. 1332.)

Although there seems to be some inconsistency in these special verdicts, yet, in our opinion, their legal effect, as presented to us, is, that the contracts with both Moore & Co. and Wedemeyer & Schulte were made with Sanford, the original contractor, and not with appellant Pool, the owner. If this were so, it would make them sub-contractors under Sanford,

and not original contractors. As to intervenors Wedemeyer & Schulte, in the absence of a statement of facts we would presume that the evidence sustained their allegations that they were original contractors, and the judgment of the court below to this effect, were it not for this affirmative finding by the jury to the contrary. Under their pleading and the special issues, the court erred in adjudging the lien in their favor.

For the error of the court in overruling the exceptions of appellant Pool to the original petition of plaintiff, Sanford, and to the petition for intervention of Moore & Co., in so far as the same claimed the mechanic's lien, and the further error in rendering judgment on the special issues in favor of both intervenors for the enforcement of such lien, the judgment must be reversed.

As the cause will be remanded, it is proper that we indicate our opinion upon certain questions which are presented in the record, and which may arise on another trial.

1. To authorize the court to decree to either the original plaintiff or the intervenors a judgment for the enforcement of the mechanic's lien as original contractors, they must, by appropriate allegations and proof, show that they are entitled to the same. In our opinion, the intervenors Moore & Co. come under the designation, "any person or firm," used in the statute, and are within both its letter and spirit. (Paschal's Dig., art. 7112.)

2. As heretofore decided by this court, the mere fact that the intervenors were sub-contractors, would not, as such, entitle them to the statutory mechanic's lien. (Shields *v.* Morrow, 51 Tex., 393; Horan *v.* Frank, 51 Tex., 401; Loonie *v.* Frank, 51 Tex., 406.)

If, however, under appropriate allegations, the testimony should show that they, or either of them, were sub-contractors under Sanford, and that they availed themselves of the special provisions of the statute in the nature of a garnishment, and thereby adjusted the "true sum due" them by Sanford as original contractor, and fixed liability upon Pool, the owner,

for its payment, then, as intimated in Horan v. Frank, *supra*, in a proper case, upon sufficient allegations and proof, as in case of collusion between the owner and the original contractor, or fraud or insolvency of the parties, equity would subrogate the intervenors to the rights of the principal contractor, both to the amount due them as thus adjusted and fixed, and also to the mechanic's lien to secure the same.

3. Pool, as owner, could not be compelled to pay, including all prior voluntary payments made in good faith, according to the terms of his contract as originally or subsequently made, and for which a lien was fixed and secured under the statute, any greater amount than the contract price. (Paschal's Dig., art. 4598; Laws 15th Leg., sec. 6, p. 92; Rev. Stats., art. 3176; Doughty v. Devlin, 1 E. D. Smith, (N. Y.,) 634; Russell v. Bell, 8 Wright, (Penn.,) 53; Horan v. Frank, 51 Tex., 401; Phil. on Mech. Liens, secs. 206–213, and authorities cited.)

4. To entitle the intervenors to be subrogated to the rights of the principal contractor, the statutory notice in the nature of a garnishment, by service of "an attested account of the amount and value of the work and labor thus performed or materials furnished and remaining unpaid," must have been given. (Paschal's Dig., art. 4595.) Mere ordinary notice, information, or knowledge, on the part of the owner, that the principal contractor was indebted to them, would not, of itself, be sufficient to bind the owner.

5. If the testimony should show that the intervenors, as subcontractors, were about to abandon the work because they were apprehensive that the principal contractor would not pay them, or for other good and sufficient reason, and that to prevent this they were induced by the owner, Pool, to continue and complete their part of the work in consideration that he would pay them therefor, this would be a sufficient original understanding to take the contract without the statute of frauds and to bind Pool, and the intervenors could, in any event, recover against him a personal judgment, or a judgment enforcing the mechanic's lien in their favor as original

contractors, if they fixed and secured the same under the terms of the statute. (Phil. on Mech. Liens, sec. 213; Holmes *v.* Shands, 4 Cush., (26 Miss.,) 642; Landis *v.* Royer, 59 Penn. St., 98.)

The judgment below is reversed and the cause remanded for further proceedings in accordance with this opinion.

REVERSED AND REMANDED.

[Opinion delivered February 24, 1880.]