CLEBURNE ST. RY. CO. v. BARBER.
(No. 7894.)

(Court of Civil Appeals of Texas. Ft. Worth. June 27, 1914. Rehearing Denied Nov. 7, 1914. Writ of Error Denied by Supreme Court Nov. 3, 1915.)

1. ESTOPPEL ☞115 — PLEADING AND ISSUES.
In a suit against a street railway company for material furnished to its lessee and alleged agent and used in the improvement of the company's park property, the submission of whether the company had ever previously given its president and general manager power to purchase material to improve the park property and to give a lien thereon was erroneous, where the issue was not pleaded by plaintiff, and was one of estoppel only.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. § 305; Dec. Dig. ☞115.]

2. CORPORATIONS ☞432 — AUTHORITY OF OFFICERS—EVIDENCE.
In such suit, where the authority of the defendant company's president and general manager to purchase material for the improvement of its park property was in issue, the refusal to permit the company to prove by its president that he had never made an important contract without consulting with and obtaining the consent of the company's board of directors, upon plaintiff's objection that the minutes of the board were the best evidence was erroneous, in view of the president's previous testimony as to important transactions for the company negotiated by him with the consent of its board, and which had not been entered in the minutes, and that the board had not authorized him to agree to a lien on the property, and the want of proof of any by-law authorizing him to contract for such improvement.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1717, 1718, 1724, 1726–1735, 1737, 1743, 1762; Dec. Dig. ☞432.]

3. CORPORATIONS ☞432—AUTHORITY OF OFFICERS—EVIDENCE—BY-LAWS.
In such suit the exclusion of the company's by-laws specifying the duties and powers of its president was erroneous, since they were material on the issue of his power to bind the company by the contract asserted by plaintiff.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1717, 1718, 1724, 1726–1735, 1737, 1743, 1762; Dec. Dig. ☞432.]

4. PRINCIPAL AND AGENT ☞148—AUTHORITY OF AGENT—NOTICE.
Persons dealing with known agent are chargeable with notice of the powers of such agent.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 534–552; Dec. Dig. ☞148.]

5. CORPORATIONS ☞432 — POWERS OF AGENT—EVIDENCE.
In a suit against a corporation to recover for material furnished to its lessee or agent in the improvement of its park property and to foreclose a lien, testimony of the lessee as to his conversation with defendant's president in which the president authorized the giving of a lien for the materials was inadmissible, without a proper predicate showing prima facie that the president had authority from defendant to authorize the lessee to place a lien on the property, or that defendant was estopped to deny such fact.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1717, 1718, 1724, 1726–1735, 1737, 1743, 1762; Dec. Dig. ☞432.]

6. MECHANICS' LIENS ☞304—AUTHORITY OF OWNER—MATERIAL—PERSONAL JUDGMENT.
In such suit, where it appeared that any authority of the lessee to place liens was limited to a lien on the material necessary for a certain improvement, a personal judgment against the company for any sum was not authorized, nor was such judgment authorized by the note sued on, which, neither in the body thereof nor in the signature thereto, purported to be the obligations of the company.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 632–635; Dec. Dig. ☞304.]

7. MECHANICS' LIENS ☞277—ACTION TO ENFORCE—ISSUES.
In such suit whether the company had been in possession of the park property in the improvement of which the material was used since a certain date was immaterial.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 546–554; Dec. Dig. ☞277.]

8. MECHANICS' LIENS ☞280—ACTION TO ENFORCE—EVIDENCE.
In such suit a supplemental contract between the company's lessee or agent and the company changing some of the terms of the original lease and evidence that the defendant's president had expressed his pleasure with the improvement were inadmissible.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 557–563; Dec. Dig. ☞280.]

9. APPEAL AND ERROR ☞1067 — HARMLESS ERROR—INSTRUCTIONS—ISSUES.
In a suit to enforce a claim for materials against defendant railway company, alleged to have been contracted for by its lessee or agent, where it did not appear that plaintiff was allowed a recovery upon the ground of a partnership between the company and such agent, the refusal to instruct that there was no issue of partnership was not prejudicial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4229; Dec. Dig. ☞1067; Trial, Cent. Dig. § 475.]

10. MECHANICS' LIENS ☞277 — ACTION TO ENFORCE—ISSUES—SURETYSHIP.
In a suit against an individual, his surety, and a street railroad company for the value of materials furnished to the individual, as the company's lessee or agent, and used by him in improving the company's property, an answer

---

alleging that such alleged lessee was not the company's agent in purchasing the material or in executing the notes and liens to secure it, that the property had been leased to such lessee, who had bound himself to make the improvements which on expiration of the lease were to become the property of the company, did not raise the issue of suretyship between the company and its lessee.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 546–554; Dec. Dig. ☜ 277.]

11. TRIAL ☜240—ARGUMENTATIVE INSTRUCTIONS.

Argumentative instructions are properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 561; Dec. Dig. ☜240.]

12. MECHANICS' LIENS ☜58—AUTHORITY OF OWNER—LESSEE.

The fact that a lessee was required to put certain improvements on the property which, on expiration of the lease, were to become the property of the lessor, would not authorize the fixing of a mechanic's lien upon the property under a contract with the lessees, independent of the question whether the company's general manager consented that the lessee might give the lien.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 72, 73; Dec. Dig. ☜58.]

Appeal from District Court, Johnson County; O. L. Lockett, Judge.

Suit by A. C. Barber against the Cleburne Street Railway Company and others. Judgment for plaintiff against the other defendants, and against the Railway Company, with foreclosure of lien, and the Company appeals. Reversed and remanded for another trial, leaving the personal judgments against the other defendants undisturbed.

J. M. Moore and Walker & Baker, all of Cleburne, for appellant. S. C. Padelford and H. P. Brown, both of Cleburne, for appellee.

DUNKLIN, J. A. C. Barber instituted this suit against A. J. Habermacher, Lee Yater, and the Cleburne Street Railway Company to recover the value of certain building material furnished by plaintiff to Habermacher and used by him in the construction of certain improvements upon a park owned by the street railway company known as "Lovelady Park," situated in the suburbs of the city of Cleburne, and for foreclosure of a mechanic's lien on the park and improvements, the land upon which the park is situated being about 20 acres. A judgment was rendered in favor of the plaintiff against Habermacher for $1,-873.39, against Lee Yater as guarantor for $600 of said sum, and against the street railway company for $850 of said sum, and with a decree of foreclosure of the mechanic's lien claimed on the entire park for said sum of $850. From that judgment, the street railway company has appealed.

It was alleged in plaintiff's petition that the building material was furnished to the street railway company and Habermacher, and was used in improving and making additions to a certain skating rink, which had theretofore been constructed upon the park. An itemized account of the material so furnished was attached to the petition as a part thereof. It was further alleged that Habermacher executed a written mechanic's lien contract, together with notes for the value of the material so furnished; that the mechanic's lien contract was in the form of a deed of trust, with power of sale upon the land and improvements. The claim of lien upon the property was predicated upon two grounds: First, that the material was purchased both by Habermacher and by the street railway company; second, upon the allegation that Habermacher executed the lien contract and notes for the purchase price of the material both for himself and the street railway company, and that he was duly authorized by the company as its agent to execute the same, the notes specifically giving a mechanic's and materialman's lien on the premises for such material.

In addition to a general denial, the street railway company, among other special defenses, pleaded that Habermacher was not its agent in purchasing the material, or in the execution of the notes and liens to secure the same, and, if Habermacher ever attempted to create a lien upon the property his act in so doing was wholly without authority from the company, or any one authorized to act for it. Defendant further alleged that prior to the date of the contract upon which plaintiff's suit is predicated, the park was leased to Habermacher by the street railway company for a period of five years, with the right to renew the same for a period of another five years upon certain conditions; that as a part of the consideration for the lease Habermacher bound himself to place and lay upon the floor of the skating rink a floor of maple wood and to make other improvements in the park, which said improvements were at the expiration of the lease to become the property of the company, all of which was known to the plaintiff at the time of his transaction with Habermacher.

By a supplemental petition plaintiff denied the allegations of the special answer, and specially denied that he had any notice of the lease contract pleaded by the defendant at the time he contracted with Habermacher to furnish the materials. In this pleading plaintiff further claimed a lien by reason of the facts alleged in the defendant's answer, namely, that the material was purchased and used by Habermacher for the construction of improvements upon the park during the existence of his lease and as one of the considerations for the lease and in compliance with the terms of the lease contract that the improvements, when so constructed, should become the property of the Railway Company.

The case was tried before a jury, who, in obedience to instructions from the court, returned findings upon special issues.

The lease from the street railway company to Habermacher was introduced in evidence. It was dated July 13, 1911. It was a lease of the park for the period of five years from the date of the instrument, with the right to Habermacher to operate the skating rink, dancing pavilion, eating stands, and cold drink stands and other amusements, with the privilege of renewing the lease for an additional period of five years. The consideration for the lease, as shown in the instrument, in part, was Habermacher's contract to pay to the railway company $1,600 per annum for each year, payable in installments of $200 at the beginning of each year and $50 on the second Monday in each month thereafter until the full sum of $1,600 shall be paid. Paragraph 5 of the lease reads as follows:

"As a further consideration for the use of the privileges of said park, the party of the second part [the lessee] agrees and obligates himself to at once lay and place upon the existing floor of the skating rink in said park a floor of maple wood, and to securely nail such floor to the existing floor and to leave the surface of such maple floor perfectly smooth, and to build in said skating rink a suitable cloakroom."

Paragraphs 11 and 12 of the lease read as follows:

"(11) The party of the second part agrees to take out insurance on the pavilion in such park in the name of the party of the first part in the sum of $1,000, for the use and benefit of the party of the first part, which insurance is to be kept alive and in force during the life of this lease, and, in case said pavilion is destroyed by fire or water during this lease, then the party of the first part agrees to immediately restore such pavilion or other improvements that may be destroyed.

"(12) It is agreed that all improvements made in such park in the nature of fixtures by the party of the second part during the life of this lease shall become the property of the party of the first part at the expiration of this lease."

Other terms of the lease are not deemed to be material to the controversy, and therefore are not referred to. It does not appear that the lease was ever filed for record in the county clerk's office. The skating rink, as originally constructed, was finished about the 1st of July, 1911, and was opened to the public on July 4th. It was then in charge and control of Habermacher, who was operating and managing it under a contract with the railway company, the receipts from such operation being divided equally between the parties to the contract; the street railway company furnishing the park, rink, and car service, and Habermacher furnishing the skates. The operation of the ring continued under this contract until the execution of the lien contract referred to above.

Plaintiff introduced in evidence a deed of trust executed by Habermacher in favor of plaintiff, Barber. The property described in the deed of trust and upon which the purported lien was given was as follows:

"All of the improvements on a tract of land known as Lovelady Park and leased to and used as a park by A. J. Habermacher; also a skating rink, drink stand, etc., and more especially a certain itemized bill of material sold to the said A. J. Habermacher; also an itemized bill of labor in constructing the improvements, together with all and singular the rights, members, hereditaments, and appurtenances to the same in any manner belonging or appertaining."

The instrument contains the further stipulation:

"This conveyance, however, is intended as a trust for the better securing of A. C. Barber of the county of Johnson and state aforesaid, in the payment of 4 certain promissory notes of which the following is a substantial copy: One note for $700, due on or before 120 days; one note for $200, due on or before 120 days; one note for $600, due on or before September 1, 1912; one note for $837.29, due on or before September 1, 1912—bearing interest at the rate of 10 per cent. per annum from date."

The instrument was dated July 15, 1911, acknowledged before a notary public October 21, 1911, and filed for record in the county clerk's office in Johnson county on November 9, 1911. Plaintiff also introduced in evidence two promissory notes dated July 15, 1911, both payable to plaintiff and signed by Habermacher, one for the sum of $600, and the other for $837.29, both due and payable September 1, 1912, stipulating for interest at the rate of 10 per cent. per annum, and stipulating further that they are secured by "mechanic's, materialman's, laborer's, and contractor's lien" on improvements theretofore and thereafter placed on the land by Habermacher, and both containing the usual stipulations for attorney's fees of 10 per cent. in case they should be placed in the hands of an attorney for collection. The evidence further showed that defendant Lee Yater guaranteed to plaintiff the payment of $600 of the indebtedness so contracted by Habermacher.

Habermacher testified that before he began operating the rink under the first contract, and before he had purchased the skates with which to do so, he insisted to Daniel Hewitt, the president and general manager of the street railway company, that the pine floor in the rink as constructed was not suitable, as it was too soft and would soon cut out, and that the same should be replaced with maple flooring, which was a hard wood; that Hewitt told him then that the company had spent its last dollar and could not make such change, but requested Habermacher to purchase the material for the maple floor and reimburse himself therefor out of the company's half of the earnings from the operation of the rink under the original contract. He testified, further, that that conversation occurred just prior to July 3d; that on the latter date he applied to plaintiff, Barber, who was engaged in the lumber business, to purchase from him the maple flooring to be used in the lease, telling Barber at the same time that Hewitt had told Habermacher that the company had spent all its money and could not purchase the lumber, but had authorized Habermacher to

purchase it and reimburse himself out of the company's share of the earnings. According to his testimony, plaintiff, in reply to that statement, said that he would be willing to sell him the flooring provided the street railway company would give its authority to Habermacher to place a lien on the material before it was sent out to the grounds; that thereupon he called Mr. Hewitt over the phone and had the following conversation with him:

"I says: 'Mr. Hewitt, Mr. Barber has found the hard wood floor in Ft. Worth, and says he can let us have it the way you said to get it, provided you will consent that the company will give authority to place a lien on any material that goes out there; he can't send it out there without you say so.' He says: 'Tell him to get it and rush it through.'"

He further testified that Barber was present at the time he so telephoned to Mr. Hewitt, and that he repeated to Barber what Hewitt said in that conversation. Habermacher testified that this conversation was prior to the beginning of any negotiations which resulted in the written lease of the park above set out.

The plaintiff testified that at the time of the execution of the notes and deed of trust by Habermacher to him he knew that Habermacher had leased the park, but did not know the terms of the lease. The testimony shows that one load of the lumber furnished by plaintiff to Habermacher was delivered on July 14, 1911, one day prior to the date of the execution of the deed of trust by Habermacher referred to already, and the remainder of the material furnished Habermacher was furnished after the execution of that instrument. According to other testimony offered by plaintiff, the wagon load of lumber sent out on July 14th was sent out by mistake, as it was not intended that any of the lumber should go out until after the deed of trust had been executed.

The evidence further shows without controversy that the lease to Habermacher was terminated and possession of the park resumed by the street railway company about one year after the date of the lease. The lease being thus terminated, Habermacher owned no interest in the improvements of the park at the time of the institution of this suit; for, even if the company wrongfully ousted him from the premises, as contended in plaintiff's pleadings, but denied by the defendant both by pleading and evidence, the only claim he could have had against the company would have been for damages for such breach of the contract, or for reinstatement of his possession, and it does not appear that either of those claims was asserted by him by any suit.

Hewitt was the president and general manager of the street railway company, conducting practically all of its business, and there was no showing on the minutes of the corporation that the board of directors had expressly empowered him to bind the company in other important transactions in the name of and for the benefit of the company which were never repudiated by it. Those facts constituted practically the only evidence relied on by plaintiff to prove the authority of Hewitt to bind defendant by the contracts alleged in the petition or that the company held him out to the public as vested with such authority.

The fifth special issue submitted by the court to the jury reads as follows:

"Fifth. You are instructed that under the undisputed evidence in this case it is not shown that the board of directors of the Cleburne Street Railway Company, by resolution, authorized Daniel Hewitt to act for the company in buying lumber and material and creating a lien in favor of Barber on said park, but you will find whether or not the said street railway company held the said Hewitt out to the public as the president and general manager, having the apparent authority to purchase material for the improvement of said park, and to determine that question you will answer the following question: Had the Cleburne Street Railway Company on or prior to the third day of July, 1911, given Hewitt the power, as president and general manager, to purchase material to improve said park and to give a lien thereon?"

[1] To that issue the jury answered: "Yes." That finding was one of the material findings upon which the judgment was based. Error has been assigned to the submission of that issue because it was one of estoppel only, and was not pleaded by plaintiff. We are of the opinion that this assignment is sound, for the reason stated, and it is accordingly sustained. Y. M. C. A. v. Schow, 161 S. W. 931; Swayne v. Insurance Co., 49 S. W. 518; Wolf v. Galbraith, 39 Tex. Civ. App. 351, 87 S. W. 390; Tex. Pro. Co. v. Turner, 27 S. W. 583; Mutual B. L. I. Co. v. Collin County Nat. Bank, 17 Tex. Civ. App. 477, 43 S. W. 831; Casey Swasey Co. v. Treadwell, 32 Tex. Civ. App. 480, 74 S. W. 791; Tres. Palacios Rice & Irri. Co. v. Eidman, 41 Tex. Civ. App. 542, 93 S. W. 698.

[2-4] We are of the opinion that there was further error in the court's refusal to permit the defendant street railway company to prove by Daniel Hewitt, its president and general manager, that he had never made an important contract, such as the one sued on by the plaintiff in this case, without consulting with and getting the consent of the board of directors of the company to make the same, over the objection of plaintiff that the minutes of the board of directors were the best evidence of such facts. Hewitt had already denied the conversation over the telephone to which Habermacher testified, and had also testified that several important transactions in behalf of the street railway company negotiated by him had been with the knowledge and consent of the board of directors, but that such action of the board of directors had not been entered upon the minutes. He further testified that the board of directors never authorized him to agree that Habermacher might fix a lien upon the property for the material necessary to put

in the hard wood floor in the skating rink. There was no proof of any by-laws or resolution of the board of directors spread upon the minutes giving to Hewitt authority to make the alleged contract upon which plaintiff's suit is predicated, and it is a familiar rule that persons dealing with a known agent are chargeable with notice of the powers of the agent. Green v. Hugo, 81 Tex. 452, 17 S. W. 79, 26 Am. St. Rep. 824. Plaintiff sought to hold the company liable upon the theory that it authorized Hewitt to make such contracts, or else held him out as having such authority. In the absence of any by-law, the only method by which Hewitt could have been so authorized or held out in such a manner as to legally bind the company would be by some action or acquiescence of the board of directors. Plaintiff's objection to the evidence now under discussion, which substantially embraced the proposition that no action of the board of directors could be proven except such as appeared on the minutes, is inconsistent with his further contention that it could be proven by circumstances aside from the by-laws and resolutions spread upon the minutes that the company held out Hewitt as vested with the authority to make the contract alleged by plaintiff, or else expressly authorized him so to do, and thereby bound itself. If, as insisted by plaintiff, appellant could be so bound by proof of that character, then clearly the evidence now under discussion was admissible to rebut the same, independent of whether or not such evidence was admissible upon some other theory. For the same reasons, we are of the opinion that there was error in excluding from the evidence the company's by-laws over plaintiff's objection thereto that the same could not bind nor affect the rights of the plaintiff. The by-laws so offered specified the duties and powers of Daniel Hewitt, its general manager and president, and we think were material upon the issue of his power to bind the company by statements which Habermacher testified Hewitt made to him over the telephone, and which are set out above.

In view of the foregoing conclusions, we deem it unnecessary to discuss several assignments of error presented in appellant's brief, but, in view of another trial, we deem it proper to submit some suggestions upon questions raised by other assignments.

[5] The testimony of Habermacher to the conversation with Daniel Hewitt over the telephone, of course, would be inadmissible, unless the proper predicate therefor is first laid by showing, prima facie at least, that Hewitt had authority from the company to authorize Habermacher to place a lien upon the property to secure the purchase price of the material purchased from the plaintiff, or else that the company is estopped from denying such fact.

[6] It appears, further, that even according to that testimony of Habermacher, his authority to place the lien was limited to a lien upon the material necessary for the maple flooring and for the purchase price thereof only, including, of course, material necessary for additional support of the flooring. Furthermore, giving that testimony its widest scope, it did not authorize a personal judgment against the street railway company for any sum, and the same can be said of the notes sued on, since neither in the body thereof nor in the signature thereto do they purport to be obligations of the street railway company. 1 Daniel, Negotiable Instruments, § 303.

[7] The issue submitted in the third paragraph of the charge, the same being a peremptory instruction to find that the street railway company has been in possession of Lovelady Park and the privileges and skating rink since August 12th, we think was irrelevant, immaterial to the rights of any of the parties to the case, and should be omitted upon another trial, as the same might possibly tend to prejudice the rights of the street railway company.

[8] We fail to see the relevancy of the supplemental contract between Habermacher and the street railway company of date May 9, 1912, nullifying some of the terms of the original lease upon the exclusion of which appellant's eighteenth assignment of error is predicated. We are of the opinion, further, that the testimony of Habermacher set out under appellant's nineteenth assignment of error, in effect, that Daniel Hewitt expressed himself as well pleased with the improvements after they had been finished, should not have been admitted.

[9] We fail to see how appellant was prejudiced by the court's refusal to submit special instruction No. 2 requested by appellant and set out under the twenty-second assignment; to the effect that there was no issue or question of partnership between the railway company and Habermacher, as it does not appear that plaintiff was allowed a recovery upon that issue.

[10, 11] The requested instructions set out in the twenty-third assignment were properly refused because they were argumentative in form. We are of the opinion that the facts set out in the defendants' answer do not raise the issue of suretyship between Habermacher and the Cleburne Street Railway Company under the lease contract. The fact that Habermacher was under contract with the railway company to construct the improvements at his own expense in consideration for the lease of the park might be the proper basis for a judgment in favor of the railway company over against Habermacher in event the railway company should be held liable to the plaintiff, but that would be by virtue of the contract alone, and not

by virtue of any relation of principal and surety, as contended by appellant in several assignments of error.

[12] Appellee insists that, as Habermacher was required by the lease contract to place the improvements on the property in consideration for the lease, and that as those improvements, when so placed, were, by the terms of the lease itself, to become the property of the railway company, those facts would of themselves authorize the fixing of a mechanic's lien upon the property, independent of the further question whether or not Daniel Hewitt, as the president and general manager of the company, gave his consent to Habermacher to fix such lien. This contention is overruled upon the authority of Faber v. Muir, 27 Tex. Civ. App. 27, 64 S. W. 940, in which a writ of error was denied as shown in 65 S. W. xvi.

For the reasons noted, the personal judgment against appellant, and also the judgment of foreclosure of the lien against the park and improvements thereon, are reversed, and the cause is remanded for another trial upon those issues, but the personal judgment in favor of the plaintiff against the other two defendants is undisturbed.

SPEER, J., not sitting.