**PENNIMAN GRAVEL & MATERIAL CO.
et al. v. HUTTON et al.   (No. 7348.)**

Court of Civil Appeals of Texas.   Austin.
April 4, 1929.

Rehearing Denied April 24, 1929.

Turner, Rodgers & Winn and Leachman &
Gardere, all of Dallas, Texas, for appellants.

E. P. Bryan, of Dallas, for Eleanor F.
Stanfill, Adm'x.

McCLENDON, C. J.   This cause arises out
of the following undisputed facts: Hutton
owned real property in Dallas county, and
on July 1, 1927, contracted with Inge &
Burgher for the erection of a brick building
thereon.   August 1, 1927, Inge & Burgher
made a subcontract with L. W. Stanfill, by
which the latter agreed to do certain con-
crete work on the building.   Between Sep-
tember 1 and 16, 1927, Stanfill purchased from
Penniman Gravel & Material Company and
from W. L. McAtee & Sons materials in the
respective amounts of $366.01 and $330.23,
all of which were used in performance of the
subcontract.   September 26, 1927, Stanfill
died, having in the meantime completed the
subcontract;   later Inge & Burgher com-
pleted the general contract.   October 24 and
27, 1927, respectively, McAtee & Sons and the
Penniman Company gave written notice to
Hutton of their claims.   November 8, 1927,
Eleanor F. Stanfill qualified as administra-
trix of L. W. Stanfill's estate.   November 7
and 28, respectively, McAtee & Sons and Pen-
niman & Co. filed with the county clerk affi-
davits asserting their liens, in compliance
with article 16, § 37, of the Constitution, and
the statutes passed in pursuance thereof.
Later their claims were filed with the admin-
istratrix, and allowed by her and the court;
the Penniman claim being classified as of the
third class, and the McAtee claim not being
classified.   The estate of L. W. Stanfill was
insolvent.   It consisted of half interest of the
value of $2,000 in the homestead, which was
burdened with a $4,000 vendor's lien, $250
worth of exempt personal property, and $137.-
51 in money;   and the court had approved
claim for funeral expenses of $610.20;   and
had made allowances to the widow and chil-
dren, aggregating $1,000.   The costs of admin-
istration were about $300.   At the time of
Stanfill's death and the completion of the gen-
eral contract, Hutton owed the general con-
tractors $696.24, and the latter owed Stan-
fill a like amount.

This suit was brought December 15, 1927,
by Hutton against Mrs. Stanfill, as adminis-
tratrix, and Penniman Company and McAtee
& Sons to remove cloud from title by virtue
of the recording of the notices of material-
men's liens;   the above amount of balance
due by Hutton to the general contractors
being deposited in the registry of the court.
Penniman Company and McAtee & Sons filed
cross-actions against Hutton, setting up their
materialmen's liens on the property and their
right to the fund.   Mrs. Stanfill set up the
administration proceedings, insolvency of the
estate, and the condition of its assets, liabili-
ties, and claims;   contested the jurisdiction
of the district court to adjudicate the ma-

terialmen's liens; and asserted the priority of the court costs, funeral expenses, and allowances made by the county court over the materialmen's liens. In a judgment upon trial by the court without a jury, Hutton was granted the relief prayed for; the balance of the money deposited in the registry of the court after satisfying the costs was ordered paid to the administratrix; and recovery on the cross-action was denied but without prejudice to assert the materialmen's liens in the probate court. From this judgment Penniman & Co. and McAtee & Sons have appealed.

But two questions are involved: (1) Jurisdiction of the district court to adjudicate the liens of appellants; and (2) the priority vel non of those liens over costs of administration, funeral expenses, and allowances.

The administratrix relies upon Western Mortgage & Inv. Co. v. Jackman, 77 Tex. 624, 14 S. W. 305, as supporting the holding of the trial court, denying jurisdiction to adjudicate the materialmen's liens. The holding in that case was to the effect that, where a claim against an estate has been allowed by the administrator, the probate court has exclusive jurisdiction to adjudicate the question of lien securing the claim. We do not think the principle announced in that case is applicable to the case at bar. Here the lien asserted was not upon property owned by the estate, or in the possession of the administratrix; but was upon the property of Hutton who had a right to have the lien discharged by payment of the amount he owed to the party entitled thereto in law, and was clearly within his rights in bringing a suit to remove cloud from title, making the several lien claimants parties and requiring them to litigate their right to the balance he owed. The district court having properly acquired jurisdiction over the suit to remove cloud from title, clearly we think acquired jurisdiction over the entire controversy, including the rights of the several impleaded claimants to the fund deposited in the registry of the court.

We are also clearly of the view that the materialmen's liens were superior to the several claims and charges asserted by the administratrix. The above provision of the Constitution creates a lien in favor of the several classes of claimants named (see authorities below), and, "in so far as it gives a lien, is as broad as language can make it. It includes materialmen, who furnish material, though to a sub-contractor, as well as those who furnish it to an original contractor." Bassett v. Mills, 89 Tex. 162, 34 S. W. 93.

The fact that the statutory requirements of notice to the owner and filing the claims of lien with the county clerk postdated the death of L. W. Stanfill did not defeat the liens. Those liens were creatures of the Constitution, and under the repeated holdings of our Supreme Court attached as of the date the material was furnished, and the subsequent compliance with the statutes regarding notice and filing which fixed the liens related back to that date. Trammell v. Mount, 68 Tex. 210, 4 S. W. 377, 2 Am. St. Rep. 479; Keating Imp. Co. v. Marshall Electric Light & Power Co., 74 Tex. 605, 12 S. W. 489; Warner Elevator Mfg. Co. v. Maverick, 88 Tex. 489, 30 S. W. 437, 31 S. W. 353, 499.

The statutes which provide for allowances to the widow and minor children, and prefer them above other claims against the estate of the deceased husband, are based upon very high consideration of public policy. As eloquently stated by Mr. Justice Lumpkin of the Georgia Supreme Court: "These statutes are abiding memorials of the wisdom and humanity of the Legislature. We know of no condition in life more pitiable than to turn into the streets, without a day's preparation, the widow and offspring of one, upon whom they have relied for their daily bread, and to expose them to wretchedness, and perhaps inconceivable ruin, before they can find the means of support by their own labor. To fritter away these Acts, we should be faithless to our high vocation. Rather let us uphold them in all their amplitude. Credit is given in reference to them, consequently no one has a right to complain." Cole v. Elfe, 23 Ga. 235.

The public policy of this state, however, in giving protection to materialmen, etc., is declared in the Constitution. Article 16, §§ 35 and 50. It is to be noted that the latter section, which protects the homestead from forced sale, excepts therefrom debts "for work and material used in constructing improvements thereon." The protection given to the homestead by the organic law of the state, should, we think, be held to rest upon higher considerations of public policy than preferences or claims which are only the creatures of statutory legislation. We are clear in the view that the lien of materialmen and laborers, created by the Constitution, cannot be defeated or impaired by statutory enactment, although the Legislature is given power, by the Constitution itself, to pass regulatory legislation "for the speedy and efficient enforcement of said liens." This was the holding of this court in Heatherly v. Little (Tex. Civ. App.) 41 S. W. 79 (Chief Justice Fisher writing); and we have found no case questioning that decision.

This holding renders unnecessary a construction of the several statutory provisions regarding priorities in the payment of claims in administration. See particularly article 3492, R. S. of 1925, and the several prior acts on the same subject. The following language of Mr. Justice Denman, in commenting upon the holding that the statutory preferences

do not take precedence over the statutory landlord's lien, might very appropriately be paraphrased to apply to liens for labor and material: "This appears to be equitable, since the rent is the consideration for the lease of the land upon which the crops are grown. It would be manifestly unjust to allow the family of the tenant who happened to die within the year to claim as exemptions the very teams and tools furnished by the landlord for which he had not received pay, or the entire crop produced upon the landlord's land, to the exclusion of the claim of the landlord for the value of such teams and tools and rent for the land. This would be virtually taking the landlord's property and giving it to the tenant's family. We do not think the statutes evidence so unjust an intent." Champion v. Shumate, 90 Tex. 597, 40 S. W. 394.

The trial court's judgment, in so far as it removes cloud from Hutton's title, is affirmed. As between appellants and the administratrix it is reversed, and judgment is here rendered awarding to the Penniman Company and to McAtee & Sons the fund in the registry of the court in proportion to their materialmen's claims. All costs are assessed against the administratrix.

Affirmed in part, and in part reversed and rendered.