IMPORT SYSTEMS INTERNATIONAL, INC., Plaintiff,

v.

HOUSTON CENTRAL INDUSTRIES, Defendant.

Civ. A. No. H–88–334.

United States District Court, S.D. Texas.

Dec. 10, 1990.

Ronald H. Tonkin, Houston, Tex., for plaintiff.

George A. Rustay, Houston, Tex., for defendant.

## SUMMARY JUDGMENT ON CONVERSION

HUGHES, District Judge.

This conversion case presents the issue whether attorney's fees that a bailee incurs in attempting to collect a debt secured by a possessory warehouseman's lien are secured by that lien. The answer is no, but because the bailor made only a conditional tender of the amount necessary to satisfy the lien, its delivery of the check was not a proper tender. The bailor having failed to discharge the lien, there was no conversion, and the bailee was entitled to sell the bailed goods to pay the debt.

1. *Background.*

This dispute arose out of an arrangement to bail shoes. Import Systems International, Inc., the bailor, had 468 cartons of its shoes delivered to the facility of Houston Central Industries (Central), the bailee, in Houston, in October 1983. Central stored

the shoes under an oral agreement and, at Import Systems's direction, occasionally delivered quantities of them for shipment to Import Systems's customers. In May 1986, Import Systems shipped 263 cartons of shoes from Central to a retail customer, Zayre, in Mannsville, Massachusetts. Zayre refused to accept the shipment, claiming the shoes were infested with cockroaches. Central promptly notified Import Systems (a) that Zayre had refused delivery and (b) that the shoes were stored for Import Systems. Central then returned the shoes to its Houston facility. The shoes were at rest in Houston from June 30, 1986, to July 22, 1987.

In addition to the claim of conversion, Import Systems claims that it told Central to store the shoes in Boston and that the shoes were infested while in Central's Houston facility. Import Systems and Central disagree (a) whether the shoes were actually infested, (b) if they were, where the infestation occurred, and (c) if the infestation occurred at Central's Houston facility, whether Central was responsible for the infestation.

Import Systems and Central then engaged in lengthy dealings, with Import Systems attempting to retrieve its shoes, and Central attempting to obtain payment from Import Systems of its freight, storage, and attorney's fees. In detail, the chronology was:

A. May 5, 1987: Central demands payment and threatens to exercise its warehouseman's lien on the shoes.

B. June 22: Central demands payment again and notifies Import Systems that it plans to hold a warehouseman's sale to dispose of the shoes on July 24. Central's bill was $7,264.63, including the attorney's fees.

C. July 1: Import Systems tenders $5,148.47 to Central as part of a settlement offer. Although Import Systems characterizes its offer as a tender of the full amount due to satisfy the warehouseman's lien (excluding Central's attorney's fees), Import Systems's offer included four conditions:

(1) The $5,148.47 was a final settlement of all of Import Systems's liabilities to Central; and

(2) Central's law firm was to hold the check in escrow until (a) Central has tendered all of Import Systems's goods, (b) Central certifies to Import Systems in writing that it has delivered all of Import Systems's goods to its designated carrier in "good and resalable" condition, and (c) the common carrier has removed Import Systems's goods from Texas; and

(3) The payment and delivery would not release Import Systems's claims against Central; and

(4) Import Systems's "offer" will expire on July 10.

D. July 7: Central makes a counteroffer to Import Systems.

E. July 13: Import Systems rejects Central's counteroffer, but extends it's offer to July 24.

F. July 22: Central says it has received a bid for the shoes of $17,000, and offers to sell them for that price and to deduct the $7,264.63 that it claims Import Systems owes Central.

G. July 24: Central sells the shoes at a warehouseman's lien sale for $16,907.

H. July 29: Import Systems rejects Central's offer to sell the shoes for $17,000, claims that Central has now converted Import Systems's goods, and demands that Central return the $5,148.47 check.

I. July 31: Central returns the check, saying that Texas law allows attorney's fees incurred in attempting to collect a debt secured by a possessory warehouseman's lien to be secured by that lien.

J. September 1: After deducting $8,966.46 for storage and sale expenses, Central sends Import Systems a check for $7,940.54.

None of these facts is disputed. The two legal issues are:

A. Are attorney's fees incurred in attempting to collect a debt secured by a possessory warehouseman's lien secured by the lien?

B.   Does tender of the proper amount to satisfy a possessory warehouseman's lien, when coupled with conditions, constitute a legal tender that discharges the lien?

2.   *Attorney's Fees Are Not Secured.*

A warehouseman has a lien against the bailor on the goods covered by a warehouse receipt or on the proceeds thereof in his possession for charges for storage or transportation (including demurrage and terminal charges), insurance, labor, or charges present or future in relation to the goods, and for expenses necessary for preservation of the goods or reasonably incurred in their sale pursuant to law.

Tex.Bus. & Com.Code § 7.209(a)(1).   Since neither this statute nor any other expressly authorizes inclusion of attorney's fees in a warehouseman's lien, both parties argue their positions by analogy, to other authority.

■■■ Central relies on the clause that states that a warehouseman has a lien for "expenses . . . reasonably incurred in their sale pursuant to law," arguing that its attorney's fees were reasonably incurred to sell the shoes, because before enforcing the lien, it had to comply with Texas law.   The expenses incurred in the handling, preservation, and sale of bailed goods are distinct from the expenses incurred by attorneys to collect the debt.   The expenses that may be the subject of a warehouseman's lien are storage, advertising, rental of facilities for the sale, and payment of auctioneers or salesmen.   Nothing in the statute requires the retention of attorneys.   The attorney's fees incurred to enforce the lien or settle the dispute are not reasonably attributable to the *sale* of the goods.   Expenses of sale and expenses of collection are different.

Central also argues that the act is a remedial act for a warehouseman who is not paid and that if a statute is curative or remedial in nature, the general rule is that it be given the most comprehensive and liberal construction possible.   *Burch v. San Antonio*, 518 S.W.2d 540, 544 (Tex. 1975), § 7.209.   The thrust of Central's ar-gument is simply that the court should broadly construe the act to include attorney's fees.   § 7.209(a)(1).   Contrary to Central's position, the court decided that the power that the city wanted to read into the statute was not there, and the court held that the legislature must confer it expressly or by necessary implication; the court would not read an additional power into the statute.   That is parallel to this court's refusal to read into the warehouseman lien act a provision for attorney's fees, since the legislature has neither expressly nor impliedly included one in the section.   The section is remedial in nature, but it allows a very narrow group of expenses to be secured by the lien.   Expenses incurred in collecting the debt are secured by the lien; expenses incurred in enforcing the lien are not secured by the lien.

Secondary authorities indicate no support for the inclusion of attorney's fees under the security of a warehouseman's lien.   *See* 78 Am.Jur.2d, Warehouses § 214, 60 Tex. Jur.2d, Warehouses § 29.   Tex.Bus. & Com.Code 7.209(a)(1) is § 7–209 of the Uniform Commercial Code *verbatim.*   A New York court has held that U.C.C. § 7–209 does not support the securing of attorney's fees by a warehouseman's lien.   *National Cold Storage Company v. Tiya Caviar Company*, 52 Misc.2d 289, 276 N.Y.S.2d 57 (N.Y.Sup.Ct.1966).   In that case, National Cold Storage, a public warehouseman stored sturgeon and caviar for the bailors.   It filed interpleader actions to determine the ownership of bailed goods after conflicting claims of ownership were asserted by several parties, and two of the bailors filed counterclaims against National, claiming conspiracy improperly to obtain their assets.   National was not attempting to foreclose a warehouseman's lien.   It was only involved in the interpleader action to determine ownership of the goods, and the court held only that the attorney's fees were not the usual charges arising out of a storage transaction.   In both *National Cold Storage* and this case the bailee incurred legal fees in disputes that arose from a bailment.

Under an analogous statute, a Texas court of appeals reversed a judgment securing an attorney fee under a statutory mechanic's lien. *Palomita, Inc. v. Medley,* 747 S.W.2d 575 (Tex.App.—Corpus Christi 1988, no writ). As with warehouseman's liens, there is no express statutory authority for securing attorney's fees which are incurred in attempting to collect a debt secured by a mechanic's lien in that lien. At the time *Palomita* was decided, Texas Prop.Code § 53.156 said that a mechanic's lien holder is entitled to recover all reasonable costs of collection, including attorney's fees, while § 53.176 provided that a lienholder who recovers in a suit on the lien is entitled also to recover reasonable attorney's fees. The *Palomita* court held that, although the statutes allow a successful mechanic's lien holder to collect attorney's fees, they do not provide for the attorney's fees to be secured by the lien. *Id.* at 577. The legislature amended § 53.156 in 1989 to provide that in a mechanic's lien proceeding the court may award costs and reasonable attorney's fees as are equitable. That amendment in no way changes the *Palomita* court's holding that the attorney's fees are not secured by a mechanic's lien.

While *Palomita* involved a mechanic's lien under the Texas Property Code, its reasoning applies equally to warehouseman's liens. Section 7.209 lacks distinct provisions for attorney's fees separate from its provisions granting a warehouseman's lien. While mechanic's liens are different from warehouseman's liens, when the legislature fails to specify that attorney's fees are secured by a warehouseman's lien, it makes sense to read the provisions on warehouseman's liens in a manner similar to the provisions on mechanic's liens, which the legislature has drafted in more detail. This court will not read attorney's fees into the warehouseman's lien statute when the legislature has declined to include them, and where a similar, but more specific, statute on mechanic's liens has been held not to include them.

3. *Conditions Vitiate a Tender.*

Before any sale pursuant to this section any person claiming a right in the goods

may pay the amount necessary to satisfy the lien and the reasonable expenses incurred under this section. In that event the goods must not be sold, but must be retained by the warehouseman subject to the terms of the receipt and this chapter.

Tex.Bus. & Com.Code § 7.210(c). The rule is that a tender of payment must be unconditional, and the full amount due must be tendered. *Collision Center Paint and Body v. Campbell,* 773 S.W.2d 354, 357 (Tex.App.—Dallas 1989, no writ). A tender is an unconditional offer by a debtor to pay not less than the amount due, and an offer to pay less than the sum due is not an effective tender. *French v. May,* 484 S.W.2d 420, 426 (Tex.Civ.App.—Corpus Christi 1972, writ ref'd n.r.e.). To discharge a possessory warehouseman's lien, the bailor must tender the amount necessary to satisfy the lien, and he must do it without conditions.

A wide variety of cases have applied the rule of unconditional tender. *See Collision Center Paint and Body, id.* (The bailor paid the amount due to car repairman (bailee) by tendering, without conditions, the full amount due for automobile painting charges which repairman indicated in a statutory notice.); *Arguelles v. Kaplan,* 736 S.W.2d 782, 784 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.) (Tender of amount owed stops the accrual of interest on a debt, but where the debtor delivered a deed to real property, as payment for the amount due on a note, to a title company to hold in escrow until the creditor returned the original note marked paid in full, the debtor's payment contained a condition and, therefore, was not a tender.); *Veale v. Rose,* 657 S.W.2d 834, 839–40 (Tex.App.–Corpus Christi 1983, writ ref'd n.r.e.) (Debtor's payment into court registry of a lesser sum than is due does not stop the running of interest.); *C.F. Bean Corporation v. Rodriguez,* 583 S.W.2d 900, 901–02 (Tex.Civ.App.—Corpus Christi 1979, no writ) (Tender by bailor of full amount of prior judgment, conditioned on bailee's signing a full release and satisfaction of judgment and abandoning his appeal, is not an unconditional tender and

does not stop the running of interest as of the date of that tender.); *Fields v. Texas Employer's Insurance Association,* 565 S.W.2d 327, 331 (Tex.Civ.App.—Amarillo 1978, writ ref'd n.r.e.) (Payment into court registry of all sums due under a judgment is not a proper tender when conditioned on settlement of the litigation, and does not stop the running of interest on a judgment being appealed.); *Stratton v. Dell Valle Independent School District,* 547 S.W.2d 727, 729 (Tex.Civ.App.—Austin 1977, no writ) (Offer to pay delinquent taxes on three tracts of land if the school district would "straighten out" the description of the tracts is a conditional offer to pay and not an effective tender.); *Wiley v. Scott,* 229 S.W.2d 650, 651 (Tex.Civ.App.–Eastland 1950, no writ) (In dispute over charge for repair of truck, payment by bailor of full amount charged with notation on check that the payment was "for overcharge" is not a valid tender because the statement constitutes a condition that the bailee relinquish a legal right.).

The attorney's fees incurred by Central in attempting to collect the debt secured by the possessory warehouseman's lien that it held on Import System's shoes were not secured by that lien. Import Systems's tender, although it was for less than the amount demanded by Central, was for the full amount lawfully due and was sufficient to discharge Central's lien. If Import Systems had done no more than pay the amount that it did, without conditions, the payment would have satisfied the lien and would have been a tender under § 7.210(c); Central would have been required to return the shoes to Import Systems. Because Import Systems conditioned the payment, however, its payment was not a proper tender. Tex.Bus.Com.Code § 7.210(c). It failed to discharge Central's possessory warehouseman's lien.

4. *Conclusion.*

Import Systems tendered less than the amount demanded by Central, but the amount it tendered was the full amount lawfully due. Import Systems's payment of the full sum due fails as a tender, however, because Import Systems conditioned the acceptance of the payment by Central. Import Systems failed to discharge the lien, and Central was entitled to sell the shoes to pay the debt. Central did not convert Import Systems's property.

This conclusion leaves only the issues of:

A. Responsibility for the infestation, and

B. Value of the shoes at the time of sale.