In re A & M OPERATING COMPANY, INC., d/b/a Custom Vessel Company, Debtor.

The RALPH M. PARSONS COMPANY, Appellant,

v.

SOUTH COAST SUPPLY COMPANY, INC., Appellee.

Nos. 6:93cv627 to 6:93cv629.

United States District Court, E.D. Texas, Tyler Division.

March 29, 1995.

Jason Riley Searcy, Longview, TX, Glenn W. Merrick and Sara A. Moon, Davis Graham & Stubbs, Denver, CO, for appellant.

William Sheehy, Wilson Miller Spivey Sheehy & Knowles, Tyler, TX, Frank Edward Billings, Billings & Solomon, and Wayne Kitchens, Houston, TX, for appellees.

## MEMORANDUM OPINION AND ORDER

STEGER, District Judge.

On this day came on to be considered the appeal of a bankruptcy court order granting a constitutional mechanic's lien in favor of the South Coast Supply Company, Inc. ("South Coast") for $309,464.32 and a general unsecured claim of $24,544.72. After careful consideration, the Court is of the opinion that the decision of the lower court should be affirmed in part and reversed and rendered in part.

This appeal is brought by the Ralph M. Parsons Company ("Parsons"). The appellee is South Coast Supply Company ("South Coast"). The debtor is A & M Operating Company, which does business as Custom Vessel Company ("CVC"). The facts are concisely stated in the bankruptcy court's opinion and will not be repeated.

## I. STANDARD OF REVIEW

"Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Bankr.R. 8013.

In contrast to the clearly erroneous standard of review for findings of fact, conclusions of law reached by the bankruptcy court are reviewed *de novo* by the district court. *T.B. Westex Foods, Inc. v. FDIC,* 950 F.2d 1187, 1190 (5th Cir.1992).

## II. THE CONSTITUTIONAL LIEN

The principal issue is whether South Coast is entitled to a constitutional materialman's lien. Because the law surrounding the constitutional materialman's lien is indeterminate and inconsistent, it is worthwhile to review the lien's history.

There are two types of materialman's liens. The more commonly used is the statutory lien established by the state legislature. Tex.Prop.Code Ann. ch. 53 (Vernon's 1995) (formerly Tex.Rev.Civ.Stat.Ann. art. 5452 *et seq.*). The statutory lien is not at issue here; all concede that South Coast did not avail itself of the statutory lien.

The second, less frequently litigated lien is the constitutional lien. In 1876, Texas extended broad protection of certain manufacturers with the following constitutional provision:

Mechanics, artisans and material men, of every class, shall have a lien upon the buildings and articles made or repaired by them for the value of their labor done thereon, or material furnished therefor; and the Legislature shall provide by law for the speedy and efficient enforcement of said liens.

Tex. Const. art. XVI, § 37.

This safeguard is nearly identical to its 1869 ancestor, which in turn paralleled statutory mechanic's liens passed by the Congress of the Texas Republic in 1839. Tex. Const. art. XVI, § 37 interp. commentary (Vernon 1993); *see also University Sav. & Loan Ass'n v. Security Lumber Co.,* 423 S.W.2d 287, 293 (Tex.1967).

Early cases confused the statutory and constitutional provisions, reading them as creating only one lien. *See, e.g., Shields v. Morrow,* 51 Tex. 393 (1879); *Horan v. Frank,* 51 Tex. 401 (1879); *see* R.D. McPherson, *The Constitutional Mechanic's Lien in Texas,* 11 So.Tex.L.J. 101, 105 (1969). In 1896, a cornerstone opinion by the Texas Supreme Court eliminated this confusion. *Strang v. Pray,* 89 Tex. 525, 35 S.W. 1054 (1896). The court held that the constitutional provision is self-executing. The constitutional lien exists independently and apart from any legislative act. *Id.; see also First Nat'l Bank in Dallas v. Whirlpool Corp.,* 517 S.W.2d 262, 267 (Tex.1974); *Wood v. Barnes,* 420 S.W.2d 425, 429 (Tex.Civ.App.—Dallas 1967, writ ref'd n.r.e.) (list of citations). The self-executing aspect of the constitutional lien is vital because it translates into the chief advantage over statutory liens: the lien-holder does not need to give notice or record his lien; his protection is automatic. Apparently the constitutions of only seven other states make reference to mechanic's liens, and only Texas' has been declared self-executing, making our constitutional lien unique among the fifty states. M.K. Woodward, *The Constitutional Lien on Chattels in Texas,* 28 Tex.L.Rev. 305, 308–09 (1950).

The same year as *Strang,* the Texas Supreme Court decreed that "[t]his [constitutional] provision, in so far as it gives a lien, is as broad as language can make it." *Bassett v. Mills,* 89 Tex. 162, 34 S.W. 93, 95 (1896). This expansive directive is misleading. *Bassett* has been conspicuously ignored by later courts which depreciated *Bassett*'s generosity and limited access to the lien.

The most important of these restrictions sharply limits the number of potential defendants: the lien may only be asserted by one in privity with the owner of property in question. *First Nat'l Bank of Paris v. Lyon–Gray Lumber Co.,* 194 S.W. 1146 (Tex. Civ.App.—Texarkana 1917), *aff'd,* 110 Tex. 162, 217 S.W. 133 (1919); *see also* Woodward, *supra,* at 316–17; Eldon L. Youngblood, *Mechanics' and Materialmen's Liens in Texas,* 26 Sw.L.J. 665, 688 (1972); *accord First Baptist Church of Tyler v. Carlton Lumber Co.,* 173 S.W. 1179 (Tex.Civ.App.—Texarkana 1915, writ ref'd). The Texarkana Court of Appeals' decision in *Lyon–Gray* was the most significant in this respect. *Lyon–Gray* swept aside courts of appeals decisions to the contrary, downplayed the generous interpretation in *Bassett,* and limited "the liens to those who own and control the material when

it passes directly to the owner of the incumbered property or by incorporation into his building." *Lyon–Gray Lumber Co.*, 194 S.W. at 1151. The Texas Supreme Court affirmed, apparently viewing a privity requirement as essential to balance the vital need of small businesses to be paid, with the necessity of guarding unsuspecting property owners from hidden liens acquired by someone with whom the owner has not conducted business. *First Nat'l Bank v. Lyon–Gray Lumber Co.*, 110 Tex. 162, 217 S.W. 133, 134 (1919) (disapproving three lower court decisions allowing unrecorded subcontractor liens against owners); *accord Lyon–Gray Lumber Co.*, 194 S.W. at 1151 ("[I]f one who sells material to a contractor may acquire such a paramount right, then the owner would in every instance be at the mercy of those who extend credit to the contractor."); *see generally* McPherson, *supra*, at 106–07 (overview of this area).

The contracting party in privity with the owner is called an "original contractor." McPherson, *supra*, at 106–07. An original contractor is "a person contracting with an owner either directly or through the owner's agent," or "one who deals directly with the owner, with no middleman or contractor intervening." Tex.Prop.Code Ann. § 53.001(7) (Vernon's 1995); *Matthews v. Waggenhaeuser Brewing Ass'n*, 83 Tex. 604, 19 S.W. 150, 151 (1892); McPherson, *supra*, at 107.

■ A corollary of the privity rule is that the constitutional lien is never available to a subcontractor. *Da–Col Paint Mfg. Co. v. American Indemnity Co.*, 517 S.W.2d 270, 273 (Tex.1974). This rule was firmly established by the Texas Supreme Court in 1879 in *Horan v. Frank*, only three years after enactment of the constitutional provision. 51 Tex. 401, 405 (1879). Among the curious turns in constitutional lien case law is that seventeen years after *Horan*, the supreme court announced in *Bassett* that a subcontractor *is* entitled to the lien. More remarkable is *Bassett*'s conclusion that the lien not only protected subcontractors but also the *materialmen* who supplied them. *Bassett*, 34 S.W. at 95. *Bassett*, as mentioned however, seems to be an aberration disowned by all later courts. *See Lyon–Gray Lumber Co.*, 194 S.W. at 1148–49 (mentioning *Bassett*'s

obscurity). All subsequent cases followed *Horan*. *See, e.g., Robert Burns Concrete Contractors v. Norman*, 561 S.W.2d 614, 617 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.); *Wiseman Hardware Co. v. R.L. King Construction Co.*, 387 S.W.2d 79, 81 (Tex.Civ.App.—Dallas 1965, no writ); *Huddleston v. Nislar*, 72 S.W.2d 959 (Tex.Civ.App.—Amarillo 1934, writ ref'd); *Lyon–Gray Lumber Co.*, 194 S.W. at 1149; *First Baptist Church of Tyler*, 173 S.W. at 1181.

■ Similarly, the lien is ineffective against a subsequent bona fide good faith purchaser for value without notice. *See Wood v. Barnes*, 420 S.W.2d 425, 429 (Tex.Civ.App.—Dallas 1967, writ ref'd n.r.e.); *Youngblood*, *supra*, at 688. The reason of course is that surprising later purchasers with unrecorded constitutional liens places too heavy of burden on real estate transactions, and again reveals the wisdom of the privity requirement.

■ Another corollary of the privity rule is that the constitutional lien can only be applied against a debtor who owns the article or building. McPherson, *supra*, at 107–17 (complete discussion). For example, an original contractor cannot obtain a lien against an owner based on the contractor's privity with a third party who has an executory purchase contract with the owner. *See, e.g., Galveston Exhibition Ass'n v. Perkins*, 80 Tex. 62, 15 S.W. 633 (1891); *Faber v. Muir*, 27 Tex.Civ.App. 27, 64 S.W. 938 (1901, writ ref'd).

■ Another limitation, this one imposed by the wording of the provision itself, is that the constitutional lien only extends to work performed on an "article" or "building." *Youngblood*, *supra*, at 688–69; *see, e.g., Ball v. Davis*, 118 Tex. 534, 18 S.W.2d 1063, 1067 (1929) (well casing is neither article nor building).

The final restriction imposed by Texas courts on the constitutional lien concerns those to whom the lien is extended. Article XVI, section 37 grants lien protection to "[m]echanics, artisans and materialmen, of every class." These words were chosen carefully by the constitution's framers in order to grant a wide scope of protection to Texas

workers. A mechanic is "a person skilled in the practical use of tools, a workman who shapes and applies material in the building of a house or other structure mentioned in the statutes; a person who performs manual labor." *Warner Memorial Univ. v. Ritenour,* 56 S.W.2d 236, 236–37 (Tex.Civ.App.—Eastland 1933, writ ref'd) (quoting *Corpus Juris* ). An artisan is "one skilled in some mechanical craft; one who is employed in an industry or mechanic art or trade," or "one trained for manual dexterity in some mechanic art or trade." *Id.;* Woodward, *supra,* at 315.

This case, however, concerns the third category, materialmen. A materialman is "a person who does not follow the business of building or contracting to build homes for others, but who manufactures, purchases or keeps for sale materials which enter into buildings and who sells or furnishes such material without performing any work or labor installing or putting them in place." *Huddleston,* 72 S.W.2d at 962 (quoting *Corpus Juris* ).

The leading case on materialman is *First National Bank in Dallas v. Whirlpool Corporation,* 517 S.W.2d 262 (Tex.1975). In *Whirlpool,* the supreme court interpreted the constitution's protection of "articles made" to mean only manufactured goods. *Id.* at 267. Moreover, the lien protects only those manufacturers who produce an article "especially for a purchaser pursuant to a special order in accordance with the purchaser's plans or specifications." *Id.* at 268; *see also* Woodward, *supra,* at 318–20. "[T]he manufacturer is the party for whom the article is originally made, and in its hands the articles are subject to the constitutional lien granted mechanics, artisans and materialmen for the value of their labor done thereon, or material furnished therefor." *Whirlpool Corp.,* 517 S.W.2d at 267.

In *Whirlpool,* the Texas Supreme Court denied constitutional lien protection to manufacturers who offer their goods to the general public without reference to the construction or repair of an identifiable building or chattel. Several aspects of this case deserve comment. First, on the surface *Whirlpool* seems to redefine "materialman" to mean "manufacturer." If true, this redefinition has devastating consequences for the ordinary supplier of goods. The court observed, "We have been cited to no case, and have found none, in which the Texas constitutional lien was held to apply to the manufacture of articles for sale by the manufacturer to the general public." *Whirlpool Corp.,* 517 S.W.2d at 267. In the strict sense, this observation might be true. But if the court meant that it could find no cases recognizing a lien in favor of a materialman who supplied ordinary goods out of his over-the-counter inventory to building or chattel construction, then the court's comments are puzzling. For over one hundred years, Texas courts have protected businesses which supplied lumber, paint, bricks, concrete, and ordinary building material such as nails, out of their general, publicly available inventory to the construction of buildings. *See, e.g., Sullivan v. Texas Briquette & Coal Co.,* 94 Tex. 541, 63 S.W. 307 (1901) (coal cars, plumber's material, machinery, lumber, boiler and building material); *Newman v. Coker,* 310 S.W.2d 354 (Tex.Civ.App.—Amarillo 1958, no writ) (lumber and building materials); *Penniman Gravel & Material Co. v. Hutton,* 16 S.W.2d 848 (Tex.Civ.App.—Austin 1929) (gravel), *aff'd* 27 S.W.2d 135 (Tex.Comm'n App.1930). Other courts have granted lien protection over material that either were or may have been manufactured by the materialman, but without any explicit requirement. *See, e.g., Brick & Tile, Inc. v. Parker,* 143 Tex. 383, 186 S.W.2d 66, 67 (1945) (bricks); *Pierce v. Mays,* 277 S.W.2d 155 (Tex.Civ.App.—Amarillo 1954) (building material), *aff'd,* 154 Tex. 487, 281 S.W.2d 79 (1955). Still other cases, while not granting a lien, apparently assumed that the supplier of such commodities was entitled under other circumstances: *Wiseman Hardware Co.,* 387 S.W.2d at 80 (paint, painting and hardware supplies); *F. & C. Engineering Co. v. Moore,* 300 S.W.2d 323 (Tex.Civ.App.—San Antonio 1957, writ ref'd n.r.e.) (concrete); *Lyon–Gray Lumber Co.,* 194 S.W. at 1149–51 (lumber and building material); *Lyon–Gray Lumber Co. v. Nocona Cotton Oil Co.,* 194 S.W. 633 (Tex.Civ. App.—Fort Worth 1917, writ ref'd) (same); *Cleburne St. Ry. Co. v. Barber,* 180 S.W. 1176, 1180 (Tex.Civ.App.—Fort Worth 1914, writ ref'd) (materialman was lumber supplier

who sold maple flooring for roller rink). Cases following *Whirlpool* seem undisturbed and continue to recognize constitutional liens for similar publicly available building material. *See, e.g., Centex Materials, Inc. v. Dalton,* 574 S.W.2d 621 (Tex.Civ.App.—Tyler 1978, no writ) (concrete; apparently sold in bags, not poured).

These cases are not clear, but they give no indication that the suppliers involved, that is, the parties seeking the lien by claiming to be materialmen, were actually the ones who cut the trees, sawed the logs, fired the bricks, or forged the nails. Nor is there any suggestion that the courts cared whether the supplier did. Yet it seems fair to assume that these suppliers offered their wares to any able purchaser among the general public. These cases seem to suppose that suppliers were entitled to lien protection if they merely supplied material later incorporated into a building. If the supreme court intended to distinguish between goods supplied by materialmen to buildings and those supplied to articles, then the distinction is less than clear.

*Whirlpool* is further perplexing because its restrictive treatment is at odds with the court's demand that such liens be interpreted generously. *See, e.g., Whirlpool Corp.,* 517 S.W.2d at 269 ("It is well settled that the mechanic's and materialman's lien statutes of this State will be liberally construed for the purpose of protecting laborers and materialmen."); *Hayek v. Western Steel Co.,* 478 S.W.2d 786, 795 (Tex.1972) ("It is a rule of long standing that the mechanic's and materialman's lien statutes of this State will be liberally construed for the purpose of protecting laborers and materialmen."); *University Sav.,* 423 S.W.2d at 296 ("Giving the lien priority is in accord with our long-standing rule of liberal construction for protection of laborers and materialmen...."); *Sullivan,* 63 S.W. at 308; *Oriental Hotel Co. v. Griffiths,* 88 Tex. 574, 33 S.W. 652, 662 (1895); *accord Ambassador Dev. Corp. v. Valdez,* 791 S.W.2d 612, 624 (Tex.App.—Fort Worth 1990, no writ).

■ *Whirlpool* justified limiting the lien to materialmen who manufacture their goods for concern of disrupting commerce: "If we

were to hold that Whirlpool had a constitutional lien upon these appliances for the value of 'material furnished therefor,' then every sale of goods by a manufacturer would result in a constitutional lien." This fear would be true only if Texas courts suddenly ceased applying Article XVI, section 37's criterion that the goods sold were incorporated into an identifiable building or article. Assuming one wished to remain consistent with precedent, one would *want* every sale of off-the-shelf goods by a manufacturer, intended by both sides of the transaction to be incorporated into an identifiable building or chattel, to result in a constitutional lien. The court's concerns are certainly legitimate; the dispute in *Whirlpool* involved refrigerators and ranges sold to the owner of an apartment complex. When *Whirlpool* expresses concern for protecting sales to the "general public," it is probably more concerned with the *consumer* public, not *industrial* purchasers. These appliances are fully functional consumer products of a type unlikely *ever* to be incorporated into the structure of a building or larger chattel. Had the court recognized a constitutional lien for such portable finished goods, the sale of any consumer appliance could be subject of a constitutional lien. On the other hand, the supreme court gave no indication that it intended to alter precedent. Nor did the court propose to deprive industrial firms of constitutional lien protection when supplying basic building material and operating components that are assimilated into larger building or chattel construction projects, particularly where the goods sold serve no purpose unless combined with other material and components.

This is probably what the supreme court meant. In fact, *Whirlpool* made this clear by quoting the Fifth Circuit's 1918 decision in *Reeves v. York Engineering & Supply Co.,* "If the sale is in the course of business, *and without reference to any particular improvement,* no lien results, unless it is specifically retained." 249 F. 513, 517 (5th Cir.1918) (emphasis added), *cert. denied,* 248 U.S. 584, 39 S.Ct. 182, 63 L.Ed. 433. Combining the two pivotal sentences from *Whirlpool* and *Reeves,* this Court interprets *Whirlpool* as holding: "that the constitutional lien on man-

ufactured chattels is available to the manufacturer only upon articles made especially for a purchaser pursuant to a special order and in accordance with the purchaser's plans or specifications" *or articles sold out of general inventory to be incorporated into a particular building or chattel.* See *Whirlpool Corp.*, 517 S.W.2d at 268. Later cases bear this conclusion, recognizing or denying constitutional liens as necessary, but unconcerned whether the goods involved were available to the general public. *See, e.g., FDIC v. Bodin Concrete Co.*, 869 S.W.2d 372, 381–82 (Tex.App.—Dallas 1993, writ denied) (concrete and lumber); *Centex Materials, Inc.*, 574 S.W.2d at 621 (bagged concrete); *Dee's Cabinet Shop, Inc. v. Weber*, 562 S.W.2d 945 (Tex.Civ.App.—Fort Worth 1978, no writ) (cabinets and doors; no discussion whether prefabricated or custom).

■ Thus, a century of jurisprudence can be distilled as follows: a materialman is entitled to a constitutional lien if it can prove that: (1) the debtor is the owner of a building or article; (2) the materialman had privity of contract with the debtor; (3) the materialman made or repaired the building or article by (a) supplying goods and constructing all or part of the building or article, (b) supplying goods and repairing the building or article, (c) supplying unique goods manufactured in accordance with the debtor's specifications, or (d) furnishing off-the-shelf general inventory goods with the intent of both the materialman and debtor that such goods be incorporated into specified buildings or articles; (4) the materialman actually supplied those goods to the debtor; and (5) the goods were incorporated into the building or article. These principles in hand, one can now consider Parsons' and CVC's appeals.

## III. APPEAL OF PARSONS AND CVC

The appellants, Parsons and CVC, argue that the bankruptcy court erred in finding South Coast entitled to a constitutional materialman's lien of $309,464.32.

### A. *Ownership of the Vessel*

■ The parties first dispute ownership of the vessel. Parsons argues that it owned the vessel, not CVC. Parsons emphasizes a CVC contract provision vesting "[t]itle to all material purchased or otherwise acquired ... upon payment for or acceptance of such materials by [Parsons]." Parsons points out its pre-payments, other payments made directly to a supplier, and testimony that materials for the Parsons contract were not to be shipped to CVC unless Parsons first accepted the material.

The bankruptcy court, on the other hand, interpreted CVC's December 16, 1992 letter to Parsons as proof that the principals themselves did not believe Parsons had prior ownership of the vessel, or that they at least had doubts. Reviewing the payments, the lower court could not conclude that Parson's payments to CVC pertained to the purchase of the nozzles, manufactured by Forged Vessel Connections ("FVC"). Testimony was equivocal on application of the funds, leaving the bankruptcy court with discretion to determine that CVC owned the vessel.

Ownership of personal property in possession of a debtor is a question of fact. The bankruptcy court's finding is by no means clearly erroneous.

### B. *Privity, Supply and Incorporation*

■ The bankruptcy court found that South Coast had privity of contract with CVC and that the components involved were actually incorporated into the vessels. The decisions are supported by invoicing and testimony and are not clearly erroneous.

Similarly, there seems to be little dispute that South Coast supplied the goods in question to the debtor. In any event, that South Coast supplied CVC is supported by the record. Consequently, the second, fourth, and fifth requirements for a constitutional materialman's lien are therefore satisfied.

### C. *South Coast's Status as Materialman*

Finally, South Coast must demonstrate that it qualifies as a materialman which manufactured unique goods in accordance with specifications supplied by the debtor, or furnished off-the-shelf general inventory goods with the intent of both it and CVC that such goods be incorporated into the vessel. Since all concede that South Coast manufactures

none of the goods it sells, the only issue is whether South Coast supplied inventory that was incorporated into a CVC vessel as planned.

Initially, it is worth noting that this case is unique because the party that manufactured the vessel components, FVC, is not the party claiming the constitutional lien. As we have seen, aside from suppliers of ordinary building material, it is normally the manufacturer or general contractor who claims the lien. Here, it is a middleman, South Coast, which supplied the manufactured goods to CVC which claims protection. Thus, confronting the bankruptcy court on the one hand was South Coast, which had privity with CVC as a direct contractor but which did not manufacture any components, and FVC on the other, which manufactured goods but lacked privity with CVC. Believing neither entity alone could satisfy the constitutional lien requisites, the court married South Coast and FVC through a "symbiotic relationship" analysis. The bankruptcy court concluded that, all things considered, the pair functioned as an "integrated entity," thereby acquiring constitutional lien protection.

■■■ Without question, the Court rejects the bankruptcy court's symbiotic relationship test. The lower court cites no precedent for its test, and indeed there is none. In fact, many Texas decisions in the privity context involved distinguishing direct contractors from subcontractors and at no time did any court attempt to merge the two despite the opportunity for doing so. Moreover, such a test poses an immediate concern: if a middleman and a subcontracting manufacturer can be treated as an integrated entity, there seems little to prevent the subcontractor from also claiming lien protection. As we have seen, subcontractors are forbidden by Texas law from claiming the constitutional lien.

■■■ Additionally, the facts do not support the lower court's finding that South Coast and FVC were integrated entities. The court was chiefly concerned with South Coast's invoicing of CVC for FVC's shipments, and that South Coast shipped FVC components directly to CVC. The billing of CVC by South Coast is simply an accounting function, inconsequential in and of itself, and far from indicating that the two companies were functionally integrated.

The record reveals that the two firms were completely autonomous, thereby failing the lower court's integrated entity test. CVC knew that it was dealing with two autonomous firms, but merely being billed by one. South Coast and FVC had separate headquarters, inventories, staffs, and accounting systems. South Coast supplied FVC catalogs to South Coast's customers altered only by a small label giving South Coast's address. CVC dealt directly with FVC on design and manufacturing matters. At least two of the component shipments were made directly from FVC to CVC, bypassing South Coast. Even crediting the lower court's symbiotic relationship analysis, the Court concludes that the bankruptcy court's finding that the two companies were integrated entities is clearly erroneous.

■■■ Nonetheless, South Coast qualifies as a materialman for purposes of the constitutional lien. The bankruptcy court erroneously assumed that *Whirlpool* prevented South Coast from claiming the materialman's lien directly and, knowing intuitively that South Coast was entitled to a lien under the long history of permitting liens in such situations, felt compelled to extend the lien vicariously through an awkward, and ultimately unnecessary analysis by reading more into *Whirlpool* than existed. As discussed above, any firm that supplies certain types of stock merchandise directly to an owner to be incorporated into a building or article is entitled to the constitutional lien. As *Whirlpool* indicates, there are limits. The merchandise sold must be what can best be termed "building material," that is, raw material (e.g. sand, gravel), structural supplies (e.g. paint, lumber, nails), or larger components, which have limited intrinsic usefulness when isolated from other such material, but when combined results in a "building or article made." Here, the bankruptcy court found as a matter of fact, and the parties do not dispute, that South Coast provided to CVC certain components such as nozzles, flanges, stubs and other fittings which were incorporated,

as intended by both sides, into a large, complex device for separating oil under extremely cold conditions. Some of the goods supplied were stock, others were manufactured by a subcontractor. Unlike Whirlpool's refrigerators and ranges which are capable of useful functions simply by plugging them in, these components accomplish no task unless assembled with many other components. It does not make any difference who manufactured the goods; they were supplied by South Coast which assumed the capital risk associated with selling building material on credit for construction of a finished good. *Cf. Wilson v. Hinton,* 131 Tex. 593, 116 S.W.2d 365, 367 (1938) ("[I]t has become the established law of this state that the lien contemplated by the Constitution ... may be created in favor of one who actually furnishes labor and material, under a written contract, which is used in the construction of an improvement, even though the same may be furnished through the agency of some one else.") Recognizing a constitutional lien in favor of South Coast for those goods supplied by FVC as well as for those goods supplied out of its own inventory accomplishes all of the objectives envisioned by those who drafted the lien provision of the Texas Constitution.

CVC argues that a materialman cannot obtain a constitutional lien without making the goods himself. As discussed, the long history of Texas precedent indicates otherwise. CVC also points to *In re Builders, Inc.,* 11 B.R. 635 (Bankr.N.D.Tex.1981) where a court, relying on *Ball v. Davis,* 118 Tex. 534, 18 S.W.2d 1063 (1929), denied a constitutional lien to a materialman who installed a central air conditioning system in a house, holding that such a system was neither a "building" nor "article made" as protected by article XVI, section 37. *In re Builders, Inc.* gravely misunderstood *Ball.* With regard to the meaning of "articles made," *Ball* stands for nothing more than that some construction projects fail to qualify as either buildings or chattel for purposes of the constitutional lien. For this reason, the court in *Ball* had little difficulty concluding that setting well casing fell outside either category. An air conditioning system is integral to a house and falls within the definition of "buildings made." *Ball* is not a retrenchment of the supreme court's generous application of the constitutional lien.

CVC also contends that a constitutional lien extends no farther than the merchandise sold; it does not extend to the final article constructed. Cases make clear, however, that the lien applies to the final article, to the extent of the *value* of the material supplied. *See, e.g., University Sav.,* 423 S.W.2d at 296. The reason is obvious—once assimilated, the merchandise is irretrievable.

Having concluded that South Coast has satisfied all requisites for a constitutional lien, the Court affirms the bankruptcy court's recognition of a constitutional lien in favor of South Coast for $309,464.32.

## IV. CROSS–APPEAL BY SOUTH COAST

On its cross-appeal, South Coast argues that the bankruptcy court improperly rejected a constitutional mechanic's lien to South Coast for $24,544.72 for sales from general inventory.

The bankruptcy court believed that *Whirlpool* prohibited constitutional liens on sales of general inventory, even though the sale was in a business context and goods were incorporated into an article as intended by both sides. For reasons discussed, this was not *Whirlpool's* intent. The Court agrees with South Coast and sustains its cross-appeal. The Court therefore reverses and renders judgment in favor of South Coast for an additional constitutional lien of $24,544.72.

## V. CONCLUSION

After careful review of the bankruptcy court's order, the parties' briefs and the record on appeal, the Court is of the opinion that the bankruptcy court's award of a constitutional lien of $309,464.32 to South Coast should be affirmed. However, the lower court's decision to deny South Coast a constitutional lien for general inventory sales is reversed and rendered in favor of South Creek. It is, therefore,

ORDERED that the Bankruptcy Court's order is AFFIRMED IN PART AND REVERSED AND RENDERED IN PART.