**In re ENRON CORP., et al., Debtors.**

**No. 01–16034 (AJG).**

United States Bankruptcy Court, S.D. New York.

July 15, 2003.

Weil, Gotshal & Manges LLP, Martin J. Bienenstock, Brian S. Rosen, Melanie Gray, Martin Sosland, of counsel, New York City, for Debtors.

Fulbright & Jaworski L.L.P., David A. Rosenzweig, of counsel, New York City, for Enterprise Products Operating L.L.P.

Fulbright & Jaworski L.L.P. Zack A. Clement, of counsel, Houston, TX, for Enterprise Products Operating L.L.P.

## MEMORANDUM DECISION AND ORDER REGARDING ENTERPRISE PRODUCTS OPERATING L.P.'S MOTION FOR RESOLUTION OF DISPUTE

ARTHUR J. GONZALEZ, Bankruptcy Judge.

### I. INTRODUCTION

Before the Court is a Motion for Resolution of Dispute Arising Under the Order Granting Motion of Enron Gas Liquids, Inc. and Enron Liquid Fuels, Inc. for an Order Authorizing the Sale of Certain Natural Gas Liquids Inventories Pursuant to Section 363 of the Bankruptcy Code (the "Dispute Motion") brought by Enterprise Products Operating L.P. ("Enterprise"). Following the filing of voluntary petitions for relief under 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code") by Enron Corp. ("Enron") and certain of its affiliated debtor entities, including Enron Gas Liquids, Inc. ("EGLI") and certain of EGLI's affiliated debtor entities (together with EGLI, the "Debtors"), on December 2, 2001, Enterprise asserted certain lien claims under § 7.209 of the Texas Business and Commerce Code and Article XVI, § 37 of the Texas Constitution, resulting from pre-petition services performed by Enterprise for which EGLI had not paid. Pursuant to the Dispute Motion, Enterprise has requested that the Court: (i) enter an order directing EGLI to pay to Enterprise the sum of $888,059.09 in satisfaction of its alleged lien claims; and (ii) award Enterprise its reasonable post-petition attorneys' fees pursuant to 11 U.S.C. § 506(b). EGLI has responded by acknowledging that a lien claim relating to the performance of certain trucking and storage services in the amount of $359,572.39 is valid, but has requested that the Court deny a lien claim relating to the performance of certain fractionation and product treatment services in the amount of $528,486.70. A hearing relating to the Dispute Motion was held in this Court on April 3, 2003.

### II. JURISDICTION

The Court has jurisdiction over this Dispute Motion pursuant to § 1334(b) of title 28 of the United States Code. This Dispute Motion is a core proceeding pursuant to

§ 157(b) of title 28 of the United States Code. Venue is proper in the district of New York pursuant to § 1408 of title 28 of the United States Code.

## III. FACTUAL BACKGROUND

Enterprise, a Texas-based energy company, is a 98.9899% owned subsidiary of Enterprise Products Partners L.P., a limited partnership traded on the New York Stock Exchange with an enterprise value of approximately $6.5 billion. Pursuant to a certain Fractionation Agreement, dated July 29, 1998, entered into between Enterprise and EGLI, a Texas-based corporation, Enterprise agreed to perform several different types of services for EGLI. These included the fractionation of Y-grade natural gas, or "raw make," in order to produce natural gas liquids ("NGLs"), product treatment services, and the trucking and storage of certain NGLs. More specifically, Enterprise has invoiced EGLI the following amounts in consideration of providing the below-referenced services: (i) $344,866.92 for the storage of over twelve (12) million gallons of NGLs (the "Storage Charge"); (ii) $14,705.47 for truck unloading relating to the NGLs (the "Trucking Charge"); (iii) $451,541.16 for the fractionation of "raw make" into NGLs, including ethane, propane, isobutene, normal butane, natural gasoline, EP mix ethane and EP mix propane (the "Fractionation Charge"); and (iv) $76,945.54 for the product treatment of "off spec" "raw make" (the "Product Treatment Charge" and, together with the Storage Charge, the Trucking Charge and the Fractionation Charge, the "Service Charges"). Fractionation, in its simplest terms, involves the separation of "raw make" into its component parts. Product treatment involves the treatment of "raw make" through the application of chemical agents to produce NGLs.

On December 2, 2001 (the "EGLI Petition Date"), Enron and certain of its affiliated debtor entities, including EGLI and certain of EGLI's affiliated debtor entities, filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Since the EGLI Petition Date, Debtors have continued to operate their businesses as debtors in possession pursuant to § 1107(a) of the Bankruptcy Code. Following the EGLI Petition Date, Enterprise asserted lien claims, under § 7.209 of the Texas Business and Commerce Code and Article XVI, § 37 of the Texas Constitution, relating to the payment of the Service Charges in an amount equal to $888,059.09. Enterprise had not sought to secure such lien claims prior to the EGLI Petition Date either through contract or by pursuing statutory lien remedies. On November 21, 2002, this Court entered an Order Granting Motion of Enron Gas Liquids, Inc. for an Order Authorizing the Sale of Certain Natural Gas Liquids Inventories Pursuant to Section 363 of the Bankruptcy Code, pursuant to which the NGLs stored by Enterprise were released to EGLI to be sold in the market. Section 363 of the Bankruptcy Code provided that the NGLs were to be sold free and clear of all liens, with such liens, if any, attaching to the proceeds of the sale of the NGLs.

EGLI has acknowledged that Enterprise holds a valid lien in the amount of $359,572.39 for the Trucking Charge and the Storage Charge (the "Trucking and Storage Lien"), but continues to dispute the alleged lien in the amount of 528,486.70 relating to the Fractionation Charge and the Product Treatment Charge (the "Fractionation and Product Treatment Lien Claim"). Therefore, the only issue remaining before this Court is whether the Fractionation and Product Treatment Lien Claim is valid.

## IV. DISCUSSION

Enterprise asserts that it is entitled to the Fractionation and Product Treatment Lien Claim pursuant to Article XVI, § 37 of the Texas Constitution (Liens of mechanics, artisans and material men) (the "Constitutional Lien"). The Constitutional Lien states:

> Mechanics, artisans and material men, of every class, shall have a lien upon the buildings and articles made or repaired by them for the value of their labor done thereon, or material furnished therefor; and the Legislature shall provide by law for the speedy and efficient enforcement of said liens.

Tex. Const. Art. XVI § 37.

■ Texas courts have held that the Constitutional Lien is self-executing and exists independently and apart from any legislative act. See In re A & M Operating Co., Inc., 182 B.R. 997, 1000 (E.D.Tex. 1995); First Nat'l Bank in Dallas v. Whirlpool Corp., 517 S.W.2d 262, 267 (Sup. Ct.Tex.1974). The Constitutional Lien is to be construed liberally in order to protect laborers and materialmen. Whirlpool Corp., 517 S.W.2d at 269 ("It is well settled that the mechanic's and materialman's lien statutes of this State [Texas] will be liberally construed for the purpose of protecting laborers and materialmen."). See also Hayek v. Western Steel Co., 478 S.W.2d 786, 795 (Sup.Ct.Tex.1972). In interpreting the Constitutional Lien, the Court looks to the usual and ordinary meaning of the words used therein. Ball v. Davis, 118 Tex. 534, 544–45, 18 S.W.2d 1063 (Sup.Ct.Tex.1929) ("The words used in the Constitution are to be given their usual and ordinary signification, unless, of course, they are technical words; or, as the rule is sometimes stated: Since the Constitution is an instrument adopted by the people generally before it has any vitality, the words employed are to interpreted [sic] as the people generally understood them.").

■ With regard to the grant of the Constitutional Lien to "mechanics, artisans and materialmen, of every class," A & M Operating states, "[t]hese words were chosen carefully by the constitution's framers in order to grant a wide scope of protection to Texas workers." A & M Operating Co., Inc., 182 B.R. at 1001–2 (emphasis added). This Court ultimately finds that Enterprise is not a mechanic, artisan or materialman as such terms are usually or ordinarily understood or as they are used in the Constitutional Lien. Although Enterprise might employ Texas workers, Enterprise as a company does not qualify as the Texas worker, as discussed in A & M Operating, that the Constitutional Lien seeks to protect. Having failed to secure its right to payment for pre-petition services through negotiation during the contractual process, Enterprise cannot now stretch the meaning of the Constitutional Lien so as to transform itself into a class of worker protected therein. Therefore, this Court holds that the Constitutional Lien does not apply to Enterprise, and the Fractionation and Product Treatment Lien Claim is rendered invalid.[1]

---

1. Enterprise has further alleged that the NGLs that it produced for EGLI constitute "articles made," and EGLI has responded that they do not. The Court notes that Enterprise has failed to cite any law or cases where, for purposes of the Constitutional Lien, anything resembling an NGL has been deemed an "article," or where processes akin to fractionalization or product treatment have been deemed to "make" an article. Given the oil and gas industry's long history and prominent presence in Texas, this omission suggests that Enterprise has employed the statute in an unconventional and unintended manner. However, the Court finds that it need not reach this issue, since Enterprise's claim fails based on the Court's conclusion that Enterprise is not a mechanic, artisan or material-

## A. Enterprise is not a Mechanic

█ Enterprise has not alleged that it should be considered a mechanic for purposes of the Constitutional Lien. However, even if Enterprise had made that claim, this Court would most likely have found that Enterprise should not be considered as such. Texas courts have defined a mechanic as "a person skilled in the practical use of tools, a workman who shapes and applies material in the building of a house or other structure mentioned in the statutes; a person who performs manual labor." *Id.* at 1002; *Warner Mem'l Univ. v. Ritenour*, 56 S.W.2d 236, 237 (Civ.App. Tex.1933).

Enterprise is clearly not a mechanic as such term is usually or ordinarily understood. Although Enterprise might employ individuals skilled in the practical use of tools, the thrust of Enterprise's business involves complex engineering processes and highly technical, scientific methods that reach beyond the practical use of tools. Likewise, Enterprise is not a workman who shapes and applies material in the building of a house or other structure, since it is not alleged that the building of structures is a function of the company. Finally, Enterprise cannot be described as a person who performs manual labor. Even if Enterprise employs individuals who engage in manual labor when fulfilling their responsibilities, the testimony of Terrance Hulburt ("Mr. Hulburt"), a chemical engineer employed by Enterprise, described fractionation as being primarily characterized by complicated, technical scientific processes. Tr. 4/3/03 p. 16:14–21:23. Rather than portraying a process driven by manual labor, Mr. Hulburt outlined a technique that is first and foremost the fruit of complex facilities and the engineers and scientists who developed them. Therefore, for the above reasons, had Enterprise alleged that it should be considered a mechanic, the Court would most likely have found that Enterprise should not be deemed as such for purposes of the Constitutional Lien.

## B. Enterprise is not an Artisan

█ Just as Enterprise may not be considered a mechanic for purposes of the Constitutional Lien, Enterprise also may not be considered an artisan. Texas courts have defined an artisan as, "one skilled in some kind of mechanical craft; one who is employed in an industrial or mechanic art or trade," or "[o]ne trained for manual dexterity in some mechanic art or trade; a handicraftsman; a mechanic." *Warner Mem'l Univ.*, 56 S.W.2d at 237. *See also A & M Operating Co., Inc.*, 182 B.R. at 1002. This definition suggests that an artisan is akin to a mechanic. This proposition is further supported by the use of the terms "mechanical craft" and "mechanic art" within the definition of artisan. Once again, the use of tools and the performance of manual labor, both hallmarks of a mechanic, are significant factors in determining whether an individual is an artisan. Enterprise cannot be considered to be skilled in a "mechanical craft" since, as discussed in section IV(A) above, the use of tools and the performance of manual labor are not the driving forces of Enterprise's engineering processes. Although certain Enterprise employees might make use of tools and engage in the performance of manual labor, it is Enterprise's engineering acumen and ability to engage in highly technical, complex processes that lie at the core of Enterprise's business.

Although Enterprise might be considered to be employed in the energy "industry," the Court finds that Enterprise's scientific and engineering sophistication,

man as required in order for the Constitutional Lien to apply.

coupled with its sheer size, bring the company's operations beyond the scope of an "industrial or mechanic art or trade" as such terms are used in the definition of artisan. Finally, Enterprise is not trained for manual dexterity in some mechanic art or trade. Once again, although Enterprise might employ certain individuals whose work involves the use of manual dexterity, the use of manual dexterity does not define Enterprise's activities. Despite the fact that skilled technicians are required to operate the equipment that enables the fractionation and product treatment processes, it is Enterprise's engineering and technical capabilities that drive Enterprise's business. In his testimony, Mr. Hulburt stated, "This is a 24/7/365 facility, which has people always running and monitoring these plants here and making minute-to-minute adjustments *to control these facilities* to produce the products that we have talked about and also to maintain a safe operation." Tr. 4/3/03 p. 13:12–18 (emphasis added). While Mr. Hulburt emphasized the need for skilled technicians to monitor and make adjustments to Enterprise's facilities and to maintain safety standards, it is the technical facilities themselves and the engineering processes behind them that ultimately bring about the production of the NGLs.

Finally, the use of the term "handicraftsman" in the definition of an artisan further supports the proposition that a key component in determining whether an individual or an entity qualifies as such for purposes of the Constitutional Lien is the use of manual dexterity or skill with the hands in pursuing a relevant occupation. Merriam–Webster's Collegiate Dictionary defines a handicraftsman as, "a person who engages in a handicraft: artisan." Merriam–Webster's Collegiate Dictionary 526 (10th ed.1993). Merriam–Webster's goes on to define a handicraft as, "manual skill; an occupation requiring skill with the hands." *Id.* at 526. Given their technical and engineering complexity, Enterprise's operations clearly fall outside of the scope of a handicraft, and under no circumstances could the Court envision Enterprise being considered a handicraftsman as that term is commonly understood. The association drawn between a handicraftsman and an artisan in the definition of an artisan emphasizes the import of manual skill in qualifying as such, and bolsters the argument that Enterprise is not an artisan for purposes of the Constitutional Lien.

The usual and ordinary meaning of the term artisan clearly does not encompass an entity driven by complex engineering and technical processes that operate on a large scale in a primarily machinated form. Contrasting with Enterprise's technical complexity, in *Warner Mem'l Univ.* the court described a sign painter and a plasterer as artisans. *Warner Mem'l Univ.*, 56 S.W.2d at 237. Both of these professions lack the engineering and technical sophistication attributable to Enterprise's business. In further support of this proposition, the Maryland artisan's lien statute, analogous to the Constitutional Lien, defines the term artisan as including any, "laborer, mechanic, repairman, tradesman, dry cleaner, and launderer." Md.Code Ann., Com. Law § 16–301 (2002). None of these categories, as commonly understood, are characterized by Enterprise's engineering or technical prowess. Since Enterprise does not fit within the usual or ordinary meaning of the term artisan, this Court finds that Enterprise is not an artisan for purposes of the Constitutional Lien.

### C. *Enterprise is not a Materialman*

■ The Court also finds that Enterprise may not be considered a materialman for purposes of the Constitutional Lien.

Texas courts have defined a materialman as "a person who does not follow the business of building or contracting to build homes for others, but who manufactures, purchases or keeps for sale materials *which enter into buildings* and who sells or furnishes such material without performing any work or labor *installing or putting them in place.*" *A & M Operating Co., Inc.,* 182 B.R. at 1002 (emphasis added). Although NGLs might enter into buildings under certain circumstances, an entity that produces, purchases or keeps for sale NGLs clearly falls outside the intended scope of this definition and the usual and ordinary meaning of a materialman.

The definition indicates that those materials supplied by the materialman will ultimately be installed or put in place through work or labor, implying that such materials would be tangible, as opposed to gaseous, since gaseous substances are generally not thought of as being "installed" or "put in place." Furthermore, the definition suggests a nexus between the business of building or contracting to build homes for others and the materials supplied by a materialman, and NGLs are not used primarily in building or construction. Therefore, this Court finds that Enterprise should not be considered a materialman for purposes of the Constitutional Lien.

### D. Summary of Constitutional Lien Issues

Enterprise has not alleged that it is a mechanic for purposes of the Constitutional Lien. The Court finds that it is also not an artisan or a materialman as those terms are usually and ordinarily understood and as such terms are employed in the Constitutional Lien. In discussing the Constitutional Lien in *Mulloy v. Humble Oil and Ref. Co.,* 250 S.W. 792, 792 (Tex.Civ.App. 1923), the court concluded that, "if an oil

and gas well is to be regarded as a mere 'article,' then it would be difficult to imagine an instance of labor done or material furnished which would not fall within the meaning of the term." *See also Ball,* 118 Tex. at 545, 18 S.W.2d 1063 ("[W]e are convinced that no one would class a well casing put together and set in a well as an 'article made'"). In a similar fashion, to rule that Enterprise is either an artisan or a materialman would be to stretch their respective definitions to an extent such that it would be difficult to imagine an instance where a person or entity that made anything in the State of Texas would not fall within the meaning of those terms. The Court further notes that Enterprise has failed to cite any law or cases where a person or entity engaged in a business resembling Enterprise's has been deemed to be a mechanic, artisan or materialman for purposes of the Constitutional Lien. Given the oil and gas industry's long history and prominent presence in Texas, this omission suggests that Enterprise has employed the statute in an unconventional and unintended manner.

*A & M Operating* specifically explains that the purpose of the Constitutional Lien is to "grant a wide scope of protection to *Texas workers.*" *A & M Operating Co., Inc.,* 182 B.R. at 1001–2 (emphasis added). Although Enterprise might employ Texas workers at its Texas facilities, Enterprise itself is not the Texas worker that the statute seeks to protect. In the present case, it is Enterprise as a company that is attempting to secure a Constitutional Lien, not those Enterprise employees who might qualify as artisans or materialmen on an individual basis. In describing Enterprise's technicians, Mr. Hulburt explained that they are, "... highly trained and highly skilled people, that not only are technically qualified, but have the ability to make good judgments and to make things happen in a fashion that will keep things

running safely and efficiently." Tr. 4/3/03 p. 22:18–23. Based on Mr. Hulburt's testimony, it is not clear to the Court that Enterprise's technicians would qualify as artisans or materialmen as such terms are used in the Constitutional Lien. However, even if those skilled technicians were judged to be artisans and materialmen, employing workers who might be eligible for a Constitutional Lien on an individual basis would not be sufficient to make Enterprise as a company either an artisan or a materialman. In the present case it is Enterprise, not its workers, who seek the protection of the Constitutional Lien. The core of Enterprise's business reaches beyond the operation of its facilities, in which its technicians are involved, to the engineering and scientific processes that Enterprise has developed and employs. Therefore, the Court must look to the overall operations of Enterprise when determining whether it qualifies as an artisan or materialman, as opposed to looking solely towards the activities of its technicians. Even if certain of Enterprise's technicians would qualify as artisans or materialmen, Enterprise as an entity does not.

For the above reasons, the Court finds that Enterprise's engineering and technical acumen, and the sophistication of the processes that it employs, brings Enterprise beyond the scope of the definitions of an artisan or a materialman as those terms are usually and ordinarily understood, and as they are used in the Constitutional Lien. Therefore, the Court can reach no conclusion but to find that Enterprise is not an artisan or a materialman and does not qualify for the Constitutional Lien. As a result, the Fractionation and Product Treatment Lien Claim is held to be invalid.

### E. Enterprise Attorneys' Fees

Enterprise has requested that it be awarded its reasonable post-petition attorneys' fees pursuant to § 506(b) of the Bankruptcy Code. The Court notes that Enterprise did not argue its rationale in asking for its attorneys' fees with any degree of specificity, so the Court looks towards the statute and the related case law exclusively to determine the merits of such claim. Section 506(b) provides that:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

11 U.S.C. § 506(b) (2003).

 In order for reasonable fees, costs or charges to be recovered by a claimant, among other criteria: (i) the claimant must have a valid secured claim; and (ii) such reasonable fees, costs or charges must be provided for pursuant to the agreement under which such claim arose. Since the Court has held that the Fractionation and Product Treatment Lien Claim is not a valid lien, Enterprise does not hold a secured claim and is therefore not entitled to attorneys' fees under § 506(b) as such fees relate to the Fractionation and Product Treatment Lien Claim.

Even if the Fractionation and Product Treatment Lien Claim was deemed valid, and with further regard to the Trucking and Storage Lien pursuant to § 7.209 of the Texas Business and Commerce Code (the "Warehouseman's Lien Statute"), the United States Supreme Court has held that, concerning § 506(b) of the Bankruptcy Code, attorneys' fees may only be recovered if such recovery is provided for under an agreement between the parties.

*See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) ("Recovery of fees, costs, and charges, however, is allowed only if they are reasonable and provided for in the agreement under which the claim arose. Therefore, in the absence of an agreement, postpetition interest is the only added recovery available."). *See also In re Vest Assocs.*, 217 B.R. 696, 700 (Bankr.S.D.N.Y.1998) ("While it is true that section 506(b) authorizes oversecured creditors to recover prepetition attorneys' fees incurred in connection with protecting their collateral, that right is limited to those creditors who have bargained and provided for the recovery of such fees in the underlying agreement."); *In re Pointer*, 952 F.2d 82, 89 (5th Cir.1992) ("... the plain language of § 506(b) distinguishes between voluntary secured claims (i.e., security agreements) and involuntary secured claims (i.e., statutory liens). All creditors can recover interest on an oversecured claim, but only creditors who have voluntary secured claims can recover penalties, fees, and costs.").

Since fees, costs and charges are not allowable under § 506(b) in the absence of a contractual entitlement, and given that the Trucking and Storage Lien was not created, and that a valid Fractionation and Product Treatment Lien claim would not be created, pursuant to an agreement between the parties, post-petition attorneys' fees are unavailable to Enterprise under § 506(b). *See* 4 L. King, *Collier on Bankruptcy* § 506.04[3] (15th ed.2003).

Moreover, the Court notes that neither the Constitutional Lien nor the Warehouseman's Lien Statute provides for the payment of attorneys' fees, further supporting the Court's finding that an award of attorneys' fees relating to such liens would be unwarranted. *See Rhoades v. Miller*, 414 S.W.2d 942, 944 (Civ.App.Tex.

1967) ("The constitutional lien exists only for labor done or materials furnished. The lien provided for therein does not include attorney's fees."). *See also Import Sys. Int'l v. Houston Cent. Indus.*, 752 F.Supp. 745, 748 (S.D.Tex.1990) ("Section 7.209 lacks distinct provisions for attorney's fees separate from its provisions granting a warehouseman's lien ... This court will not read attorney's fees into the warehouseman's lien statute when the legislature has declined to include them ...").

For the above reasons, this Court holds that Enterprise is not entitled to the collection of its reasonable post-petition attorneys' fees relating to the aforementioned lien claims.

## V. CONCLUSION

Since EGLI has acknowledged the validity of the Trucking and Storage Lien, such lien in the amount of $359,572.39 is deemed valid. However, since the Trucking and Storage Lien did not arise under a contractual agreement between the parties, attorneys' fees relating to such lien are denied.

Furthermore, given that Enterprise may not be considered a mechanic, artisan or materialman for purposes of the Constitutional Lien, this Court holds that Enterprise is not entitled to the protection afforded by the Constitutional Lien with regard to the Fractionation and Product Treatment Lien Claim, or to any attorneys' fees relating thereto. Moreover, even if the Fractionation and Product Treatment Lien Claim was deemed valid, attorneys' fees relating to the Fractionation and Product Treatment Lien Claim would be denied nevertheless because such lien did not arise under a contractual agreement between the parties.

Therefore, for the reasons set forth in this Memorandum Decision and Order, it is hereby:

**200**

ORDERED, that the Trucking and Storage Lien in the amount of $359,572.39 be allowed; and it is further

ORDERED, that the Fractionation and Product Treatment Lien Claim in the amount of $528,486.70 be denied; and it is further

ORDERED, that Enterprise's request that Debtors pay its reasonable post-petition attorneys' fees pursuant to 11 U.S.C. § 506(b) be denied.